Stees, et al. v. Leonard et al.

JOHN A. STEES, *et al.*

*vs.*

CHARLES LEONARD, *et al.*

By agreement under seal, the defendants contracted to build, erect and complete a three-story business house on land of the plaintiffs, in accordance with plans and specifications forming part of the contract. When the building had been nearly completed by the defendants, it fell, owing to a latent defect in the soil, which became saturated with water, and unable to support it. The defendants began to rebuild, and had a second time nearly

Stees et al. v. Leonard et al.

completed the building, when it again fell, from the same cause as before, whereupon the defendants refused to proceed further under the contract. *Held*, that the defects in the soil did not excuse the defendants from the performance of their contract; that for their failure to perform, they were liable in damages to the plaintiffs; and that it was no defense to the action, that the building, so far as it was erected, was constructed in accordance with the plans and specifications.

Evidence of a prior parol promise of the plaintiffs to drain the land, if necessary, held inadmissible to vary the rights and obligations of the parties under the subsequent sealed contract.

In their answer, the defendants pleaded that after the making of the contract, and when it was discovered that the land would not, unless drained, sustain the proposed building, the plaintiffs promised that they would cause the land to be well and thoroughly drained; but that the plaintiffs wholly failed and neglected to drain the land or any part thereof. *Held*, that this mere promise, being without consideration, was *nudum pactum*, on which the defendants had no right to rely, and was inoperative to vary the sealed contract.

On the trial, the defendants offered to prove, (among other things,) that upon the discovery of the insufficiency of the land to sustain the building, unless drained, the plaintiffs agreed to keep the same well and properly drained during the construction of the building, and in consequence thereof the defendants did not drain the same; that the plaintiffs kept the land drained until just before the fall of the building, when they neglected to keep the same drained, by reason of which neglect the soil became saturated with water, and the building fell. *Held*, that the proof offered was inadmissible, the facts offered to be proved not being pleaded in the answer, and being inconsistent with the facts therein pleaded.

*Semble*, the facts offered to be proved would, if pleaded, constitute a good defense to the action.

Part of an entire offer of proof made by the defendants being inadmissible, the whole offer was properly rejected.

The objection, that proof offered is incompetent, irrelevant and immaterial, is sufficiently specific, where the ground of objection is, that the facts offered to be proved are not pleaded, and are inconsistent with the facts pleaded.

The defendants, who are architects and builders, having, at plaintiffs' request, furnished them with plans and specifica-

tions for a building proposed to be erected by them on their own land, afterwards, and on the 18th August, 1868, the plaintiffs and defendants made and executed a contract under seal, in which they are all described as " of the city of St. Paul," &c. By the terms of the contract, the defendants " agree to and with the said John A. and Washington M. Stees, to well and truly build, erect and complete the three story business house, proposed to be erected by the said J. A. & W. M. Stees, on Minnesota street, between Third and Fourth streets ; all in accordance with the plans and specifications of the same, with such alterations as are mentioned in said specifications, prepared by M. Sheire & Bro., architects, and signed by both parties ; the building, with the exception of painting, to be completed on or before the first day of January, 1869. In consideration whereof the said John A. & W. M. Stees * * agree to pay, or cause to be paid, unto the said Charles Leonard, Monroe and Romaine Sheire, * * * the sum of $6,735 in payments as follows : $500, when the excavation is completed ; $800 when the basement walls are up ; $800 when the first story walls are up ; $1,000 when the second story walls are up ; $1,200 when the third story walls are up, and the roof on ; $1,200 when the plastering is done ; and the balance when the building is completed." The specifications annexed to the contract are very full, and provide, (among other things,) that " All the walls shall be of the following thickness : foundation walls, two feet thick, and shall have footings six inches thick, which shall run clear across walls and project six inches on each side of wall above it." The specifications contain no other provisions relating to the character of the foundation for the building.

The defendants entered upon the performance of the contract and erected the proposed building to a height of three stories, when it fell to the ground, on the 1st November, 1868.

Stees et al. v. Leonard et al.

In the following year, the defendants again attempted to perform the contract, and again erected the building to the same height as before, when it again fell, on the 1st August, 1869, whereupon the defendants abandoned the work, and refused to perform the contract.

The plaintiffs allege in their complaint the foregoing facts, and also that the fall of the building was owing to the negligence and unskilful work of the defendants, and the poor quality of the material furnished by them. Judgment is demanded for the sum of $5,214.80, with interest, as the damages sustained by the plaintiffs; being $3,745.80 paid, pursuant to the contract, during the progress of the work, $1,000 as damages for loss of the use of the lot on which the building was to be erected, and $469, as damages, occasioned by the fall of the building, to an adjacent house of plaintiffs, and property stored therein.

The defendants in their answer allege, among many defenses, that the building was constructed in all respects in accordance with the plans and specifications, in a workmanlike manner, and of materials of good quality. As a further defense they allege, "Eighth, * * that the plaintiffs, at the time of calling for bids and offers upon the said plans and specifications aforesaid, and at the time of the making of the said agreement, to-wit: August 18, 1868, and as a part of the consideration of said agreement, and for the purpose of inducing said defendants to enter into said agreement, and from time to time as the erection of said building progressed, and after the fall thereof, for the purpose, and with the intent of inducing the defendants to go on and attempt to rebuild the same, the plaintiffs stated, represented, undertook and promised to and with the defendants, in consideration that the defendants would and did enter into said agreement, and go on and attempt to rebuild the same after the same had fallen by reason

of the wrongful acts and neglect of the plaintiffs,and without any fault of the defendants, that they, the plaintiffs, would drain and cause the said piece of land and premises to be well and thoroughly drained, and the water to be kept out of.the same, so as to prevent any injury to such building, or the work and labor thereon, or the materials used therefor, from water; and it was then and there understood and agreed, by and between the plaintiffs and the defendants, that the plaintiffs would, and it then and there belonged to the plaintiffs to furnish, in the general course of the business, the piece of land, and a proper foundation for said building to rest upon, and cause the same to be well and thoroughly drained, and the water to be kept out of the same as aforesaid. That the defendants entered into such agreement, and went on and attempted to build said building, and attempted to rebuild said building, after the same had fallen as aforesaid, wholly relying upon the statement, undertaking and promise of plaintiffs aforesaid, that they would drain, and their obligation aforesaid, to drain and keep the water out of the said piece of land and premises, and furnish and provide, then and there a proper and safe foundation for said building to rest upon, and not otherwise. That the plaintiffs, during all the time aforesaid, wholly and wrongfully failed and neglected to drain, or cause to be drained, the said piece of land and premises or any part of the same, or to keep the water out of the same, or to furnish any proper piece of land, or proper or safe foundation for said building to rest upon; and that by reason of such failure and neglect of plaintiffs, the water flowed and rushed in upon and over, and percolated through and saturated the said piece of land, and the foundation on which said building stood, and which was composed in large part of quicksand, and caused the same to become soft, slippery, porous and unsafe, and undermined the said building, and caused the said building and the

walls thereof to fall, in each instance mentioned in said complaint, and by such failure of plaintiffs to drain such piece of land and premises aforesaid, and their failure and neglect to furnish or provide any proper or safe foundation for said building to rest upon, or any safe or proper piece of land on which to build the same, and without any fault on the part of the defendants, as the plaintiffs well know. And the plaintiffs have thereby, by their own wrongful acts, and their own failure and neglect aforesaid, prevented the defendants from performing their said contract, and from building the said building complete, and caused said building, when first erected, and caused the said building when re-erected by these defendants, as aforesaid, to fall; and thereby broken and rescinded the said contract and agreement, and every part of the same, without any fault of the defendants."

The defendants further allege " that after entering into said agreement, relying upon the promises and undertakings of the plaintiffs, and their obligation to drain said premises as aforesaid, and to furnish a proper and safe piece of land and foundation for said building, and after making the excavation for the cellar and basement of said building, in said piece of land, and before commencing building the walls of said building at all, the defendants first discovered that the said foundation, and the bottom of said excavation, and the said piece of land under said excavation, had been a quagmire, and consisted of quicksand to a great depth, and was loose, spongy, porous and soft, and was wholly unfit for the foundation of a stone building, such as proposed to be erected thereon by the plaintiffs, as aforesaid, and that the same was not a safe or proper foundation for said building ; that prior to that time, the defendants had no knowledge of, and no means of knowing the character of said foundation, or any of the facts afore-

said respecting the same, as the plaintiffs well knew, and could not have ascertained the same in any way or manner."

At the trial in the district court for Ramsey county, the defendants made the following offers of proof:

That at the time when plaintiffs applied to defendants to draw plans and specifications for the building mentioned in the complaint, the matter of draining the lot on which the building was to be erected, was talked over between the parties ; and that the plaintiffs then stated that they did not think that such lot would need draining, but if any draining should be needed, they would do it.

To which the plaintiffs objected as incompetent, immaterial and irrelevant, and because the contract was in writing.

That in architecture and building, "footings," when used in a building, are the lowest portion of the structure, and the only artificial foundation employed for the building, when footings are employed.

That they constructed each of these buildings that fell, in all respects as required by the contract and specifications.

The evidence thus offered, as well as that contained in two other offers of proof, stated in the opinion, was objected to as incompetent, irrelevant and immaterial, and in each case the objections were sustained, and the defendants excepted.

The jury found for the plaintiffs. The defendants moved, upon a bill of exceptions, for a new trial, and appeal from the order denying their motion.

LAMPREYS, and GILFILLAN & WILLIAMS, for Appellants.

I. The case differs from *School Trustees vs. Bennett*, 3 *Dutcher*, 513, where the rule is stated to be that "If a party, for a sufficient consideration, agrees to erect and complete a building on a *particular* spot, and find all the materials and do all the

labor, he must erect and complete it, because he has agreed to do so." In such a contract, it may be urged that the parties contract with reference to that *particular spot*, and with a knowledge of its condition. In this case no particular spot is indicated by the contract. The selection of it is left to the plaintiffs. The only express limit to their choice is, that it shall be " on Minnesota street, between Third and Fourth streets." But there must be this implied qualification : that the right to select the particular spot shall be reasonably exercised, the reasonableness of their choice to be determined by the character of the building to be erected, and the requirements of the specifications. The case is not different from a contract where the builder agrees to erect a building with material to be furnished by the owner, in which case the owner would be bound to furnish fit and proper material, even though nothing was said in the contract as to its character. The right to designate the particular spot being reserved to plaintiffs, they must select one that will sustain the building described in the specifications, and if the spot they select is not, in its natural state, suitable, they must make it so.

The specifications in this case are full and explicit, setting forth everything to be done, and how it shall be done, from the bottom to the top, and the builder is bound to follow them, and is not bound to go beyond their obvious intent and meaning. He does not guarantee that they are sufficient. On the contrary, the owner guarantees, when he contracts for the work to be done, that they are sufficient, and that the work, without anything being done in addition, can be done on the spot which he will select. From the report of the case of *School Trustees vs. Bennett*, it does not appear that any such details were in the specifications, or that there was anything beyond an agreement to erect, upon a particular spot, a building of specified proportions and material.

II. The rule that a contract in writing cannot be varied by proof of the prior or contemporaneous negotiations of the parties, is confined to the stipulations and subject matter of the contract. As to any collateral matters, not mentioned in the contract, an independent parol agreement may be proved. *Jeffry vs. Walter*, 1 *Starkie*, 267 ; *Keough vs. McNett*, 6 *Minn.* 513 ; *Kelsey vs. Dickson*, 2 *Blackf.* 236 ; *Gerrish vs. Washburn*, 9 *Pick.* 339 ; *Morris vs. Whitcher*, 20 *N. Y.* 41 ; 2 *Starkie Ev.* 1049. The matter of making the spot selected for the building fit to receive and sustain it, is not mentioned directly or indirectly in the contract or specifications, and is entirely collateral to the stipulations in the written contract.

III. The court erred in overruling defendants' offers of proof of plaintiffs' agreement to drain the land, made subsequent to the execution of the contract. (See these offers in the opinion.) When building contracts are modified, in the course of the work, so as to excuse the builder from doing something which his contract requires him to do, the presumption is, (unless it be agreed otherwise,) that the owner is to be allowed whatever it would cost the builder to do it, and this is a sufficient consideration.

No present consideration was necessary. If the parties acted on the agreement, so that the defendants would suffer if it were not upheld, that furnishes a sufficient consideration. 3 *Kent,* 565.

However the rule may be, as to modifying the terms of a contract under seal, by a subsequent parol agreement while executory, and the authorities are not agreed on this point, there is no doubt of this, that the parties having acted upon or executed the parol agreement, it is valid. *Siebert vs. Leonard*, 17 *Minn.* 433 ; *LeFevre vs. LeFevre*, 4 *Serg. & Rawle,* 241 ; *Fleming vs. Gilbert*, 3 *John.* 528 ; *Lattimer vs. Larson*, 14 *John.* 330 ; *Langworthy vs. Smith*, 2 *Wend.* 587 ; *Munroe vs. Perkins,*

9 *Pick.* 298 ; *Allen vs. Jaquish,* 21 *Wend.* 628 ; *Pierrepont vs. Barnard,* 6 *N. Y.* 279 ; 1 *Rolle's Abr.* 453, *pl.* 5 ; 1 *Espinasse,* 35.

To admit the proof offered, it is not necessary that it shall have the effect of modifying the contract, or of releasing defendants from their duty to keep the lot drained. The defendants could, by parol, contract with plaintiffs to do for them any part of the work, and the law would imply a promise on the part of the defendants to pay plaintiffs what such work would be worth ; and in such case the defendants could recover the damages sustained through the plaintiffs' negligence, and, to avoid circuity of action, this claim should be set off against plaintiffs' claim for non-performance. To give the defendants this claim against plaintiffs, no promise, express or implied, to pay plaintiffs for the work of draining, would be necessary ; for one who agrees gratuitously to do any act for another, though not obliged to go on and do it, is yet liable for any negligence he may be guilty of in doing it.

Bigelow, Flandrau & Clark, for Respondents.

*By the Court.*—Young, J.—The general principle of law which underlies this case, is well established. If a man bind. himself, by a positive, express contract, to do an act in itself possible, he must perform his engagement, unless prevented by the act of God, the law, or the other party to the contract. No hardship, no unforeseen hindrance, no difficulty short of absolute impossibility, will excuse him from doing what he has expressly agreed to do. This doctrine may sometimes seem to bear heavily upon contractors ; but, in such cases, the hardship is attributable, not to the law, but to the contractor himself, who has improvidently assumed an absolute, when he might have undertaken only a qualified liability. The law does no more than enforce the contract as the parties them-

selves have made it.   Many cases illustrating  the application
of the doctrine to every variety  of contract, are collected in
the note to *Cutter vs. Powell*, 2 *Smith Lead. Cas.* 1.

The rule has been applied in several recent cases, closely
analagous to the present in their leading facts.   In *Adams vs.
Nichols*, 19 *Pick.* 275, the defendant Nichols contracted to
erect a dwelling house for plaintiff on plaintiff's land.   The
house was nearly completed, when it was destroyed by acci-
dental fire.   It was held that the casualty did not relieve the
contractor from his obligation to perform the contract he had
deliberately entered into.   The court clearly state and illus-
trate the rule, as laid down in the note to *Walton vs. Water-
house*, 2 *Wms. Saunders*, 422, and add : " In these and similar
cases, which seem hard and oppressive, the law does no more
than enforce the exact contract entered into.   If there be any
hardship, it arises from the indiscretion or want of foresight
of the suffering party.   It is not the province of the law to re-
lieve persons from the improvidence of their own acts."

In *School Dist. vs. Dauchy*, 25 *Conn.* 530, the defendant con-
tracted to build and complete a school house.   When nearly
finished, the building was struck by lightning, and consumed
by the consequent fire, and the defendant refused to rebuild,
although plaintiffs offered to allow him such further time as
should be necessary.   It was held that this non-performance
was not excused by the destruction of the building.   The court
thus state the rule : " If a person promise absolutely, without
exception or qualification, that a certain thing shall be done
by a given time, or that a certain event shall take place, and
the thing to be done, or the event, is neither impossible nor
unlawful at the time of the promise, he is bound by his
promise, unless the performance, before that time, becomes
unlawful."

*School Trustees vs. Bennett*, 3 *Dutcher*, 513, is almost identical,

in its material facts, with the present case.  The contractors agreed to build and complete a school house, and find all materials therefor, according to specifications annexed to the contract; the building to be located on a lot owned by plaintiff, and designated in the contract.  When the building was nearly completed, it was blown down by a sudden and violent gale of wind.  The contractors again began to erect the building, when it fell, solely on account of the soil on which it stood having become soft and miry, and unable to sustain the weight of the building; although, when the foundations were laid, the soil was so hard as to be penetrated with difficulty by a pickaxe, and its defects were latent.  The plaintiff had a verdict for the amount of the instalments, paid under the contract as the work progressed.  The verdict was sustained by the supreme court, which held that the loss, although arising solely from a latent defect in the soil, and not from a faulty construction of the building, must fall on the contractor.

In the opinion of the court, the question is fully examined, many cases are cited, and the rule is stated, " that where a party by his own contract creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract.  *  *  *  If, before the building is completed or accepted, it is destroyed by fire or other casualty, the loss falls upon the builder; he must rebuild.  The thing may be done, and he has contracted to do it.  *  *  *  *  No matter how harsh and apparently unjust in its operation the rule may occasionally be, it cannot be denied that it has its foundations in good sense and inflexible honesty.  He that agrees to do an act, should do it, unless absolutely impossible.  He should provide against contingencies in his contract.  Where one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to

sustain it, or rather, the law leaves it where the agreement of the parties has put it.  *  *  *  Neither the destruction of the incomplete building by a tornado, nor its falling by a latent softness of the soil, which rendered the foundation insecure, *necessarily* prevented the performance of the contract to build, erect and complete this building for the specified price. It can still be done, for aught that was opened to the jury as a defense, and overruled by the court."

In *Dermott vs. Jones*, 2 *Wallace*, 1, the foundation of the building sank, owing to a latent defect in the soil, and the owner was compelled to take down and rebuild a portion of the work. The contractor having sued for his pay, it was held that the owner might recoup the damages sustained by his deviation from the contract. The court refer with approval to the cases cited, and say : " The principle which controlled them rests upon a solid foundation of reason and justice. It regards the sanctity of contracts. It requires a party to do what he has agreed to do. If unexpected impediments lie in the way, and a loss ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated, what the parties themselves have not stipulated."

Nothing can be added to the clear and cogent arguments we have quoted, in vindication of the wisdom and justice of the rule, which must govern this case, unless it is in some way distinguishable from the cases cited.

It is argued that the spot on which the building is to be erected, is not designated with precision in the contract, but is left to be selected by the owner ; that, under the contract, the right to designate the particular spot being reserved to plaintiffs, they must select one that will sustain the building

described in the specifications, and if the spot they select is not, in its natural state, suitable, they must make it so; that in this respect the present case differs from *School Trustees vs. Bennett.*

The contract does not, perhaps, designate the site of the proposed building with absolute certainty; but in this particular it is aided by the pleadings. The complaint states that defendants contracted to erect the proposed building on " *a certain piece* of land of which the plaintiffs then were and now are the owners in fee, fronting on Minnesota street, between Third and Fourth streets, in the city of St. Paul." The answer expressly admits that the defendants entered into a contract to erect the building, according to the plans, &c., " on that certain piece of land in said complaint described," and that they " entered upon the performance of said contract, and proceeded with the erection of said building," &c. This is an express admission that the contract was made with reference to the identical piece of land on which the defendants afterwards attempted to perform it, and leaves no foundation in fact for the defendants' argument.

It is no defense to the action, that the specifications directed that " footings " should be used as the foundation of the building, and that the defendants, in the construction of these footings, as well as in all other particulars, conformed to the specifications. The defendants contracted to " erect and complete the building." Whatever was necessary to be done in order to complete the building, they were bound by the contract to do. If the building could not be completed without other or stronger foundations than the footings specified, they were bound to furnish such other foundations. If the building could not be erected without draining the land, then they must drain the land, " because they have agreed to do everything necessary to erect and complete the building."

(3 *Dutcher*, 520 ; and see *Dermott vs. Jones, supra,* where the same point was made by the contractor, but ruled against him by the court.)

As the draining of the land was, in fact, necessary to the erection and completion of the building, it was a thing to be done, under the contract, by the defendants. The prior parol agreement that plaintiffs should drain the land, related, therefore, to a matter embraced within the terms of the written contract, and was not, as claimed by defendants' counsel, collateral thereto. It was, accordingly, under the familiar rule, inadmissible in evidence to vary the terms of the written contract, and was properly excluded.

In their second and third offers, the defendants proposed to prove that after the making of the written contract, and when the defendants, in the course of their excavation for the cellar and foundation, first discovered that the soil, being porous and spongy, would not sustain the building, unless drained, the plaintiffs proposed and promised to keep the soil well drained during the construction of the building ; that, in consequence, the defendants did not drain the same ; that plaintiffs for a time kept the soil drained, but afterwards, and just before the fall of the building, they neglected to drain, in consequence of which neglect the soil became saturated with water, and the building fell ; and that a like- promise was made by defendants at the beginning of the erection of the second building, followed by like part performance and neglect, and subsequent, and consequent, fall of the building.

The rule that a sealed contract cannot be varied by a subsequent parol agreement, is of great antiquity, the maxim on which it rests, *unumquodque dissolvitur eodem modo, quo ligatur,* being one of the most ancient in our law. (*Broom Leg. Max.* 877 ; 5 *Rep.* 26 *a,* citing *Bracton, lib.* 2, *fol.* 28 ; and see *Bracton, fol.* 101.) In early days the rigor with which it was en-

forced in the courts of law, led to the interference of chancery to prevent injustice. (Per Lord Ellesmere, *Earl of Oxford's case*, 2 *Lead. Cas. in Eq.* 508* ; 1 *Spence, Eq. Jur.* 636.) In later times that rigor has become much relaxed, although the English courts of law have refused to permit sealed contracts to be varied by parol in cases of great hardship. *Littler vs. Holland*, 3 *T. R.* 590 ; *Gwynne vs. Davy*, 1 *Man. & Gr.* 857 ; *West vs. Blakeway*, 2 *Id.* 729 ; and see *Albert vs. Grosvenor Investment Co., Law Rep.* 3 *Q. B.* 123.

But in this country, it has become a well settled exception to the rule, that a sealed contract may be modified by a subsequent parol agreement, if the latter has been executed, or has been so acted on that the enforcing of the original contract would be inequitable. *Munroe vs. Perkins,* 9 *Pick.* 298 ; *Mill-dam Foundry vs. Hovey*, 21 *Pick.* 417 ; *Blasdell vs. Souther*, 6 *Gray*, 149 ; *Foster vs. Dawber*, 6 *Exchēq.* 854, and note ; *Thurston vs. Ludwig*, 6 *Ohio St.* 1 ; *Delacroix vs. Bulkley*, 13 *Wend.* 71 ; *Allen vs. Jaquish*, 21 *Wend.* 628 ; *Vicary vs. Moore*, 2 *Watts,* 451 ; *Lawall vs. Rader*, 24 *Penn. St.* 283 ; *Carrier vs. Dilworth*, 59 *Id.* 406 ; *Richardson vs. Cooper*, 25 *Me.* 450 ; *Lawrence vs. Dole*, 11 *Vt.* 549 ; *Patrick vs. Adams*, 29 *Vt.* 376 ; *Siebert vs. Leonard*, 17 *Minn.* 436 ; *Very vs. Levy*, 13 *How.* 345 ; 1 *Sm. Lead. Cas.* (*6th Ed.*) 576.

Whether the evidence offered shows a valid consideration for the plaintiff's promise, or whether it shows that such promise, though without consideration, has been so acted on as to enure, by way of estoppel or otherwise, to release defendants from their obligation to drain, are questions that were fully discussed at the bar, but which we are not called upon to determine ; for the objection is well taken by counsel for the plaintiffs, that the evidence embraced in the second and third offers is inadmissible under the pleadings.

In their answer, the defendants allege an offer and promise

by plaintiffs, (made after the defendants had commenced work under the contract,) to keep the land drained during the erection of the building. No consideration is alleged for this promise, and, as *nudum pactum*, it could of itself, have no effect to vary the obligations imposed on the defendants by the sealed contract. The answer proceeds to allege " that the plaintiffs wholly and wrongfully failed and neglected to drain or cause to be drained the said piece of land, or any part of the same." It is clear that the defendants would have no right to rely on this naked promise, followed by no acts of plaintiffs in part performance. If the defendants went on with the building, without taking the precaution to drain the land, they proceeded at their own risk. The answer sets up no facts on which an estoppel can be founded, and shows no defence to the action.

But the defendants, at the trial, offered to prove, not only that the plaintiffs offered to drain the land, but also " that the plaintiffs did, for a time, keep the same drained,   *   *   *   * but afterwards they neglected to do so," &c. Assuming that the facts offered to be proved would constitute a defense, (and we are not prepared to say they would not,) no such defense is pleaded in the answer.

The tendency of this proof was to establish a new defense, not pleaded, and to contradict, rather than sustain, the allegations of the answer. For this reason it was inadmissible, even if the facts offered to be proved would, if admissible, constitute a defense to the action. If the proof offered would have no such tendency, it was immaterial, and for this reason also was rightly excluded. And as all the evidence embraced in each offer, was offered as a whole, and a part thereof was inadmissible, the entire offers were properly rejected.

The objection that the evidence offered was " incompetent, irrelevant and immaterial," was sufficiently specific. The de-

fendants' counsel must know the contents of the answer, and that evidence inconsistent therewith is inadmissible, if objected to.

There was, therefore, no error in the exclusion of the evidence offered, and the order appealed from is affirmed.