FORD & DENNING *vs.* THE SHEPARD COMPANY.

JUNE 25, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1)  *Contracts. Rescission. Building Construction.*

Performance of a contract for construction work is not excused by the fact that there is a defect in the soil which renders necessary a greater amount of work than was contemplated by the contractor at the time of the execution of the contract.

(2)  *Contracts. Rescission. Building Construction.*

Where a party at the time of entering into a contract for construction work knew of a defect in the soil, and in causing the plans and specifications to be prepared intentionally caused to be omitted therefrom the plans and specifications for dealing with such defect for the purpose of deceiving the contractor; after the discovery of such defect by the contractor and the abandonment of the contract by him, he may recover on the common

32

counts the value of the work and materials furnished, but the mere knowledge of the defect on the part of defendant, disconnected from any attempt or intention on his part to conceal it from the contractor or to prevent or deter him from an examination of the premises would not justify a rescission of the contract by the contractor, and where the character of the soil was a matter of common knowledge, defendant might assume that the contractor would be advised of it or could easily acquire and perhaps had acquired a sufficient knowledge of it.

(3) *Contracts. Rescission. Building Construction.*

Where a contract for construction work contained a number of provisions which would naturally suggest to expert contractors the desirability of making an examination of the soil, and the contractor had an opportunity to and did make an examination of the premises, and it did not appear that a careful examination would not have discovered the difficulties afterwards found, the contractor is not justified in a rescission of the contract, based on a defect in the soil, rendering necessary a greater amount of work than was contemplated at the execution of the contract.

ASSUMPSIT. Heard on exceptions of defendant and sustained.

VINCENT, J. The plaintiffs are copartners, residing in Chelsea, in the Commonwealth of Massachusetts, and are engaged in business as general contractors. On September 3, 1910, they entered into a written contract with the defendant, a Rhode Island corporation, to do certain work and furnish certain materials in and about the construction and alteration of the boiler room, in the basement of the defendant's store, located on Westminster and Clemence Streets, in the City of Providence, including the setting of boilers, etc.

The plaintiffs commenced work on September 7, 1910, and continued until September 19, 1910. On or about the last named date the plaintiffs in making some excavations for the purpose of removing the foundations of certain of the piers which sustained the weight of the building and replacing them with deeper foundations, as required by the contract, came upon a bed of quicksand or other soft or loose material which, as they allege, continued to rise, through the opening made, as fast as it was removed.

Upon making this discovery the plaintiffs stopped work and sent the following letter to the defendant's architect:

"CHELSEA, MASS., September 20, 1910.

MR. FRED POPE,
    682 Tremont Building,
        Boston, Mass.

DEAR SIR:

In the progress of our work on contract at The Shepard Company Store, at Providence, R. I. (contract signed September 3, 1910), we find that in going to the required depth as called for in our contract that the soil at that depth is what is known as quicksand, and is considered by us unsafe upon which to rest pier footings, wall footings and boiler settings. Unless we receive orders from you to the contrary we will proceed with the work but will not be responsible for any settlements, etc., that may subsequently occur.

Very truly yours,

FORD & DENNING."

This letter led to a conference between Mr. Ford, one of the plaintiffs, and Mr. John Shepard, Jr., president of the defendant company, and was followed by a letter from Mr. Shepard to the plaintiffs as follows:

"PROVIDENCE, R. I., September 22, 1910.

MESSRS. FORD & DENNING,
    Boston, Mass.

GENTLEMEN:

I understand that there is a disagreement between you and the architect, Mr. Fred Pope, as to your contract liability for certain work and material which the architect considers necessary for the proper completion of the boiler room in The Shepard Company's building, Providence, which you have contracted to build, under contract with The Shepard Company.

It seems to me a question to be settled after the work is completed instead of having the work delayed for the adjustment of your differences with the architect at this time. The Shepard Company is willing and agrees to pay you for all work and material which you are not to furnish under your contract and which you may furnish under direction of the architect necessary for the satisfactory completion of the work you have undertaken on condition that you will immediately proceed with the work as directed by the architect. The necessity of having the work rushed to completion is my only reason for this writing.

JOHN SHEPARD, JR.,<br>President of The Shepard Company."

The next feature in the correspondence is the following letter from the plaintiffs to Mr. Shepard:

"CHELSEA, MASS., September 29, 1910.

MR. JOHN SHEPARD,
  President Shepard Company,
    Providence, R. I.

DEAR SIR:

We have received the following report from Mr. Charles R. Gow—Engineer who is an expert on foundations. We have in accordance with your request examined the plan of work for The Shepard Co., store, at Providence, and have had a test boring made to determine the nature of the soil which is to carry the loads imposed by the proposed work.

The layer of material upon which the pier footings are to rest is apparently rather unstable as a foundation material, consisting of a very fine wet sand which assumes the nature of a liver when disturbed. In this condition it will flow or yield under pressure and would generally speaking, be considered an undesirable material for a foundation.

There is at a distance of $13\frac{1}{3}$ ft. below the proposed footing a stratum of coarse sand and gravel 2 ft. in thickness, forming a blanket over another deposit of fine sand which contains more clay and is therefore more stable.

We would advise that concrete piles, consisting of wrought iron pipes 8 in. in diameter be driven or jacked down the 13 ft. or more to the gravel stratum, when they could be washed out and filled with concrete forming a permanent concrete pile which would distribute the loads of the piers to the gravel. We would also suggest that in excavating into this fine material, 3 in. tongued and grooved sheating should be used, driven well below the bottom of the proposed excavation, so as to properly confine the sand. It will probably be necessary to enclose the entire area of proposed boiler pit in this manner in addition to the sheating required for the individual pierspits.

In the event of this manner of procuring a safe foundation be endorsed by your architect, Mr. Fred Pope, and approved by you, we will furnish labor and material necessary to complete work as above described and in conjunction with plans already prepared by Mr. Pope.

For the additional sum of six thousand dollars ($6,000.00), making our estimate read sixteen thousand two hundred dollars ($16,200.00).

Yours respectfully,

FORD & DENNING."

(1) By these letters the plaintiff first notified the defendant of the presence of the quicksand; its unsuitability as a foundation for pier footings, wall footings and boiler settings; and expressed their intention of proceeding with the work, under the contract, unless they received orders to the contrary, at the same time disclaiming all responsibility for any settling which might subsequently occur. Mr. Shepard, acting on behalf of the defendant and being desirous that the work should proceed with all possible speed, leaving any questions which might arise, to be settled later, assured the plaintiffs that if they would go on and complete the work in a satisfactory manner The Shepard Company would pay for all work and materials furnished by them not called for by their contract.

Shortly after receiving these assurances from Mr. Shepard, the plaintiffs communicated to him the result of an examination of the premises made by an engineer expert in the matter of foundations.    The report of this engineer was to the effect that the quicksand or soft material before mentioned would not furnish a stable and suitable foundation for the pier footings and contained suggestions as to the manner and method in and by which proper foundations might be secured.

There was some further correspondence between the parties through their counsel and architects to all of which it will not be necessary to particularly refer.    In this further correspondence the plaintiffs claimed that they were not liable under their contract to furnish the additional work and material which the presence of the quicksand called for, but that they would furnish the same for the added sum of $6,000.    The defendant contended that the plaintiffs were bound under their contract to complete the work in a substantial and proper manner without any compensation in addition to that named in the contract.

At this juncture additional plans and specifications were prepared indicating in detail the labor and materials which would be required to properly deal with the quicksand.    A contract comprising these additional matters was executed by the parties, but was not delivered and never became effective.

Finally, the plaintiffs, after reiterating their willingness to complete the work under the contract, as they construed it, that is, placing the piers upon a foundation which they had already advised would be unsuitable, wrote to the attorneys of the defendant the following letter declining to proceed with the work:

DECEMBER 21, 1910.

MESSRS. COMSTOCK & CANNING,
        Banigan Building,                                    .
                Providence, R. I.,
        _Ford & Denning_ v. _Shepard Company._
GENTLEMEN:                .

Referring to my conversation with your Mr. Comstock yesterday relative to the above matter, I would say that I

have taken up the matter with Messrs. Ford & Denning, and as the additional specifications handed to them by Mr. Pope, the architect, are not a part of their original contract, nor a change in their contract, but are a substantial addition to their contract, and materially effect the whole situation, and as there is grave risk involved in attempting the work set forth on the additional specifications, they do not feel that they are willing to take on that additional contract to the one which they already have.

They are ready and willing, however, to proceed and carry on and fulfill their original contract as soon as they are notified by the architect or The Shepard Company that the premises are in safe and suitable condition for them so to do.

Very truly yours,

JAMES M. GRAHAM,

Attorney for Ford & Denning."

The plaintiffs in this letter claimed that the specifications of the defendant's architect covered work not a part of their original contract but in addition thereto and that owing to the "grave risk involved in attempting the work set forth on the additional specifications" they were unwilling to accept the additional contract and they expressed their willingness to proceed with the original contract upon being notified that the premises were in a safe and suitable condition for them to do so.

The plaintiffs brought their suit against the defendant company, the declaration being in two counts. The first count sets forth the contract and distinctly alleges a breach of the same by the defendant. The second count is what is known as a common count for goods, wares, merchandise and materials sold and delivered; for money laid out and expended; for work and labor done and performed; and for interest, etc. Reference to the contract was made in the first count, and a copy attached thereto.

In the trial of the case, the Superior Court ruled in construing the contract that it was incumbent upon the plaintiffs

to take care of the quicksand whatever might be the expense to them of so doing. To this ruling the plaintiffs took no exception. We think that such ruling was correct. It is well settled that the performance of a contract of this sort is not excused by the fact that there was a defect in the soil which rendered necessary a greater amount of work than was contemplated by the contractor at the time he executed his contract. *Beebe* v. *Johnson,* 19 Wend. 500; *Superintendent of Public Schools* v. *Bennett,* 27 N. J. L., 513; *Dermott* v. *Jones,* 2 Wall. 1; *Stees* v. *Leonard,* 20 Minn. 494.

(2)    After the ruling of the Superior Court, before mentioned, as to the liability of the plaintiffs to perform the work necessary under their contract and that the plaintiffs had broken it, the trial was allowed to proceed under the common count to recover the value of the work and materials furnished by the plaintiffs to the defendant upon the theory, and upon the undertaking of the plaintiffs to show, that they were justified in breaking their contract, they having been led to execute it through the fraud of the defendant in concealing from them the nature and character of the soil in which the pier foundations were to be placed. This change of base upon the part of the plaintiffs and their adoption of the view expressed by the court that they had broken the contract and not the defendant was not designed to bring about the recovery of damages for the fraud or deceit of the defendant, but to enable them to show that they were justified in their abandonment of the contract and therefore entitled to recover under the common count for the work and labor furnished.

The jury returned a verdict for the plaintiffs for $5,466.72 and found specially (1) that the defendant corporation by its officers having authority to bind it in the matter of making the contract sued on, at the time of entering into the same, knew of the presence of the quicksand complained of; (2) that the defendant in causing the plans and specifications to be prepared for the construction of the work intentionally caused to be omitted therefrom the plans and specifications for dealing with the quicksand for the purpose of deceiving the plaintiffs.

We think that if the jury were justified by the evidence in finding specially as they did the plaintiffs might recover a verdict under the common count and that such verdict should be sustained. This leads us to the consideration of the question as to whether the jury were justified in finding as they did, and the decision of those questions seems to be, as the plaintiffs admit, determinative of their case against the defendant.

We do not think that a knowledge of the quicksand on the part of the defendant, disconnected from any attempt or intention on its part to conceal it from the plaintiffs or to prevent or deter them from an examination of the premises, would be a sufficient justification for the breaking of the contract by the plaintiffs. If, however, as the plaintiffs now claim, and undertook to show at the trial, the character of the soil in that particular locality was a matter of common knowledge, the defendant might reasonably assume that the plaintiffs would be advised of it or could easily acquire, and perhaps had acquired, a sufficient knowledge of it. It is well known that contractors before entering into a contract for work of that character usually subject the premises to examination, obtain borings, and otherwise satisfy themselves as to the underlying soil in which they are to operate. The specifications, which were a part of the plaintiffs' contract, contain a number of provisions which would naturally suggest to expert contractors in that line of work the desirability of making a thorough examination of the soil where the pier foundations were to be placed. These specifications required that "excavations must be kept free from water;" that "the pits in which this concrete is dropped must be thoroughly dry and no water allowed to come in contact with the concrete;" that "in making the excavation for these walls the contractor must use great care to retain the earth on the wall side of the excavation in vertical position;" that "if it is found necessary to use planking to hold the earth in position and these cannot be removed and the earth held in position without them then they must be left;" and that "the contractor for the work in the boiler room must examine

the boiler chimney and its foundations before he commences his work on the retaining wall. If unusual precautions are necessary he must notify the architect and under the instruction of the architect do what is necessary to insure the permanent safety of the work.''

Besides all this, the plaintiffs admit that they had an opportunity to and did make an examination of the premises. They do not make any attempt to show that a careful examination in the outset would have failed to discover the difficulties which they afterwards found in the progress of the work.

A careful examination of the transcript does not reveal any evidence which would justify a finding that there was any intentional concealment or deception on the part of the defendant as to the matter of the quicksand. The mere knowledge of the defendant as to the quicksand would not be sufficient to justify a breaking of the contract by the plaintiffs unless there was evidence of some plan or intention on its part to deceive. The defendant must have known that the plaintiffs had examined the premises and it might naturally and fairly conclude that they, as experienced contractors, had acquainted themselves with the character of the soil through the well-known means of obtaining such information.

The plaintiff having failed to show any intentional concealment or deception on defendant's part leading the plaintiffs to the execution of the contract, we think that the defendant's exception to the refusal of the court to direct a verdict should be sustained. Having reached this conclusion it will not be necessary to consider the other exceptions of the defendant and they are formally overruled.

The defendant's exception to the refusal of the trial court to direct a verdict is sustained. The plaintiffs may appear before this court on June 20, 1914, at 10 o'clock A. M., if they shall see fit and show cause if any they have why this case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

*James M. Graham, Fitzgerald & Higgins,* for plaintiff.

*Comstock & Canning, Patrick P. Curran,* for defendant.