# CHARLESTON

## VALE v. SUITER & DUNBAR.

Submitted March 10, 1905.   Decided November 21, 1905.

1. CONTRACTS—*Action on Evidence—Evidence.*
    A written contract, between other parties than the parties to a suit, which is referred to in the written contract sued upon and to any extent supplements the same, is admissible in evidence upon the trial. (p. 358).

2. EVIDENCE—*Declarations—Res Gestae.*
    Communications between a party to a suit and his employes, not in the presence of the adverse party and of which he has no notice, are not admissible in evidence in his behalf unless they are a part of the *res gastae*. (p. 361).

3. TRIAL—*Exclusion of Evidence—Motion.*
    When a motion is made to strike out a portion of the testimony of a witness, the part of the testimony desired to be stricken out must be particularly and definitely pointed out. (p. 362).

4. CONTRACT—*Failure to Perform.*
    Where a party by his own contract creates a duty or charge upon himself, his undertaking must be substantially complied with under any and all circumstances. To excuse a performance his contract must provide for it. (p. 363).

Appeal from Circuit Court, Mason County.

Action by A. W. Vale against Suiter & Dunbar. Judgment for plaintiff. Defendants bring error.

*Reversed.*

C. E. HOGG, SOMERVILLE & SOMERVILLE, and HOLLIS C. JOHNSON, for plaintiffs in error.

W. R. GUNN and J. S. SPENCER, for defendant in error.

McWHORTER, JUDGE :

This is an action of *assumpsit* brought by A. W. Vale against Suiter and Dunbar, in the circuit court of Mason county to recover from defendants a balance claimed to be due by him for sawing into lumber and ties, timber furnished him at his portable saw mill by defendants on what was known as the William Miller Two Mile Creek Farm in Mason county, filing with his declaration a bill of particulars showing a balance due plaintiff of $860.42. The defendants entered their plea of *non-assumpsit* and filed a special plea in writing setting up a contract in writing made on the 5th day of May, 1900, between the plaintiff and the defendants, whereby the plaintiff in consideration that the defendants would pay him five cents for each tie manufactured from said timber, and three dollars per thousand for all other lumber or bill stuff, except ties gotten out, covenanted and agreed with said defendants that he would set up and put in good running order with a capacity of ten to twelve thousand feet per day a portable saw-mill with proper attachments for cut-off saw and edger on said farm and that he would make three sets for sawing on said premises and use good judgment in getting out all the lumber possible that would be marketable from the logs of said timber and agreed to saw standard ties, 6x8 inch, and 8 feet long, and 6x9 inch, 8½ feet long; that he would furnish a grader for the inspection of the lumber and superintend the stacking of the same on the yard; that he would have the said mill set within six weeks after the signing of said agreement; that he would run the same steadily, save when prevented from so doing by unavoidable accidents and saw all timber as ordered by defendants, including oak, poplar, ash, hickory, linn, elm, buckeye, walnut, sycamore and beech, quartered oak excepted, and that afterwards the parties extended said contract on same terms as the

original so as to include two additional sets of said mill on said farm; that said plaintiff not regarding his said several covenants, promises and agreements did not set up and put in good running order with a capacity of from ten to twelve thousand feet per day a portable sawmill with proper attach-. ments for cutoff saw and edger on the farm and did not use good judgment in getting out all of the lumber possible that would be marketable from the logs gotten out of said timber and did not furnish a grader for the inspection of said lumber and did not superintend the stacking of the lumber as per agreement, and did not run the mill steadily save when prevented from so doing by unavoidable accidents, and did not saw all timber as ordered by the defendants, including the various kinds of timber mentioned, and that by reason of plaintiff's failure it became necessary for defendants to employ a man to do the grading plaintiff agreed to have done, and were compelled to take down lumber and re-grade and re-stack the same, whereby the defendants were damaged to the amount of $138.27; and that by reason of plaintiff's failure to run said mill steadily, as agreed, said defendants were delayed three months in getting out said lumber and having the same marketed and getting returns therefrom, by reason of which they were damaged on account of such delay for interest on money they were compelled to borrow the sum of $120; for insurance on said lumber for three months by reason of plaintiff's failure to comply with the said clause of the agreement, $31.89; for three extra men they were compelled to keep for three months by reason of plaintiff's failure to comply with said clause of said agreement, $330; and for loss of time suffered by G. W. Suiter and S. A. Dunbar for three months each by reason of such failure of plaintiff, $600; and for damages occasioned by flood to stock on yards which defendants were prevented from removing in time to avoid flood by reason of plaintiff's failure to run said mill steadily except when prevented from so doing by unavoidable accidents, $175; and by reason of such delay for three months defendants forfeited a contract which they had with Ellis & Ellis, of Baltimore, which expired on December 31, 1900, and which contract defendants could and would have fulfilled but for such failure of plaintiff, whereby they suffered damage to the amount of $250; also forfeited another contract for the same

reason with Clark & Clark for the sale of ties whereby they suffered damages to the amount of $171.99; and that said defendants by reason of the said premises had sustained damages amounting in the whole to a large sum of money, to-wit: the sum of $1,817.10, which was still due and unpaid and owing from the plaintiff to defendants, and which was there pleaded as an offset against the plaintiff, which plea was verified by S. A. Dunbar, one of the defendants, to which special plea in writing plaintiff filed his general replication in writing and denied the truth of said plea and prayed that the same might be inquired of by the country. A jury was empaneled and sworn to try the issue. In the course of the trial of the case the defendants took bills of exceptions numbered respectively from one to twenty-one, which were signed, sealed and saved to the defendants. The first nineteen of which were exceptions to the rulings of the court in relation to the admission of testimony claimed to be improperly admitted.

Exception No. 1: V. C. Bobo, a witness introduced by plaintiff, was asked, "Please state whether you allowed any assistance that you rendered at the breakdowns or anything of the kind to interfere with your duties as measurer, tallyer and grader of lumber sawed by Mr. Vale's mill on the William Miller Two Mile Creek Farm?", which he was permitted to answer over the objection of the defendants. He answered, "I did not." The witness had been employed by plaintiff in the capacity indicated by the question, and had at times, as it appears from the evidence assisted about the mill in some other matters and the object of the question was to show that his duties as measurer and grader were not interfered with by such assistance rendered by him in other matters. The defendants do not rely upon this exception in their brief and I see no valid objection to the testimony. Plaintiff had a right to have the question answered, if there was not sufficient work in the line to employ witness' whole time he could properly be engaged otherwise when not so employed.

Bill of Exception No. 2 relates to questions asked on cross-examination by plaintiff of the witness, G. W. Suiter, and which questions were permitted to be asked and answered over the objection of the defendants, relating to the timber

that was cut to be sawed and shipped. This exception likewise is not relied upon by defendants as it is not mentioned in their brief.

Bills of Exceptions Nos. 3 and 4 relate to testimony referring to a contract in writing between Graham & Blessing on the one side and Suiter & Dunbar on the other, dated March 2, 1900, in relation to the hauling of the timber by Graham & Blessing for Suiter & Dunbar, on the William Miller Two Mile Creek Farm, to the mill of plaintiff. One of the objections to the introduction of this testimony set out in said bills of exceptions was, that it was thereby attempted to prove the contents and provisions of a contract in writing by oral testimony, using secondary evidence without laying the grounds therefor, the plaintiff being in possession of the primary evidence. 1 Green'l on Ev. sec. 82; 7 A. and E. E. 85, (1st. Ed.); 11 *Id.* 535, (2nd Ed.) The contract itself was the best evidence of its contents and it was improper to hear the testimony of witnesses as to what its contents were, and especially giving a construction of it. When improper testimony has been admitted over the objection of the opposite party, the presumption is that he was prejudiced by the admission of such testimony, unless it affirmatively appears that in fact he was not prejudiced by it. *Hall* v. *Lyons*, 29 W. Va. 410; *Taylor* v. *Railroad Co.*, 33 W. Va. 39; *Dent* v. *Pickens*, 34 W. Va. 240, (syl. pt. 4:) "Where illegal evidence is admitted against the objection of a party it will be cause for setting aside the verdict, unless it clearly appear that the objecting party was not prejudiced thereby." The testimony referred to in said bills of exceptions Nos. 3 and 4 should not have been introduced.

It is proper at this point to consider Bill of Exception No. 19, which goes to the introduction in evidence by the plaintiff of the contract of March 2, 1900, between Suiter & Dunbar of the one part, and Blessing & Graham of the other. It is claimed by the plaintiff that it was properly introduced because of its provisions under which the plaintiff's mill was to be supplied with logs, and the supervisory right reserved by defendants to forfeit the contract and personally furnish the logs at the mill themselves; that as between Vale and Suiter & Dunbar the loggers were the agents and employes of the defendants, and that the failure of the loggers to sup-

ply the mill, which to any extent caused the delay of the plaintiff in his sawing, was contributory negligence chargeable to defendants, and that to such extent plaintiff was not liable for injury resulting from such delay, and that it was proper evidence as showing that the loggers' measurement was to be "mill measurement;" and "which is to be taken and made by the said first and second parties and mill operators jointly, shall be the basis of all settlements under this contract." While this contract of March 2, 1900, was between the defendants and Graham & Blessing alone, and they were the only parties to it, yet, there is a reference to this contract in the contract of May 5, 1900, between the plaintiff and the defendants, as being the contract under which the logs were to be supplied to the mill to be sawed by the plaintiff. This contract of March 2 was fully identified as the contract under which the mill was to be supplied with logs, and, under it, upon the failure, on the part of the loggers, Graham & Blessing, the defendants were entitled to forfeit this contract and themselves furnish the logs; and the same contract provided that plaintiff, Vale, should look to Graham & Blessing for damages for any delay in furnishing logs. The contract was relevant as showing that Graham & Blessing were the agents and employes of defendants, and that their delay or failure was that of defendants. And it also contained provisions for measurements, which were to be "mill measurements," and under it the measurements were to be taken by the three parties, Suiter & Dunbar, Graham & Blessing, "and the mill operators jointly." Thus it was a necessary supplement to the contract of May 5th, between plaintiff and defendants, as that contract in itself made no provision for measurements and no provision whatever for supplying logs to the mill; without the contract of March 2nd, that of May 5th would be manifestly incomplete, and being so the former necessarily became a part of the latter by the reference to it, in so far as it supplements it and is not inconsistent with it. 9 Cyc. 770; 1 Whar. Law of Ev. secs. 618–619. The court did not err in admitting the contract of March 2nd, 1900, in evidence.

Bill of Exceptions No. 5 relates to the cross-examination of Lee Arrington, witness called on behalf of the defendants. The questions objected to as propounded by counsel for

plaintiff on cross-examination were: .Q. "What were those dead culls worth at the time they were left there in the hollow?" A. "I don't hardly know." Q. "Would you have bought them?" A. "Yes sir, I would have bought them at some price." This was a legitimate cross-examination, the defendants having examined the witness concerning the culls in question, and there was evidence tending to prove that plaintiff was to be paid for sawing culls.

Bill of Exceptions No. 6 concerns the examination of the plaintiff as a witness on behalf of himself, giving his opinion of V. C. Bobo as to his competency and capacity as a grader of lumber, and the court was asked to instruct the jury to disregard the answer of the witness, which motion was overruled. This, under *Purkey* v. *Transportation Co.*, 57 W. Va. 595, and cases there cited, is inadmissible as evidence, and the court should have instructed the jury to disregard it.

Bill of Exceptions No. 7 relates to the examination of the plaintiff as a witness, by his counsel, in relation to other mills, which he had in operation, where he speaks of two other mills; one in Gallia county, Ohio, the other in Meigs county, Ohio. What other mills plaintiff was running or had in operation elsewhere was wholly immaterial and irrelevant. Counsel for plaintiff contend that this evidence may not have been pertinent but it was absolutely harmless, and applies the same remarks to the evidence set out in bill of exceptions No. 8. While this error alone would not be sufficient perhaps to reverse the case, it is irrelevant and should not have been admitted, and as there must be another trial, it is proper to here say so.

Bill of Exceptions No. 8 refers to the questions asked the plaintiff, A. W. Vale, on re-examination in relation to what he did on receiving a telegram from his men, dated January 7th, 1901, which seems to have been in relation to the demoralizing effect the report about the prevalence of smallpox had upon his men, when he was permitted to show that he had sent to his employe, J. D. Farley, a telegram to "Keep in close and go ahead. A. W. Vale." Q. "In pursuance of that, you may state whether the men did keep in close and go ahead?" A. "Part of them refused to obey that and left, a few of them stayed and went ahead and finished the job; but they went away so that they were a broken crew, and they

could not go ahead and move to another job and set up the mill." Q. "Please state whether or not you abandoned your operations at that time, or whether you went ahead and did the best you could?" A. "We went ahead and did the best we could under the circumstances." This evidence was concerning communications between the plaintiff and his employes not in the presence of the defendants or either of them and of which they had no notice. The purpose of it was evidently to impress upon the minds of the jury that plaintiff had been at that time diligently striving to comply with the terms of his contract by running the mill steadily. The communications were self serving and improper to be introduced as evidence.—*Scott* v. *Shelor*, 28 Grat. 891; 20 Cent. Dig. section 1068.

The evidence objected to by the defendants, as set out in Bill of Exceptions No. 9, is touching the evidence of Vale tending to show that he had no trouble with regard to paying his men, and no complaint by them because they were not promptly paid, which he had a right to show.

Bill of Exceptions No. 10 is of the same character as the evidence set forth in Bill of Exceptions No. 7, and the questions therein complained of were improper, except the last question, which was: "Please state whether or not in your opinion you had the necessary men at this mill to operate it in accordance with the terms of your contract?" I see no objection to this question, and the answer thereto was proper in so far as it was responsive to the question, but it was improper for the witness to show the sufficiency of the force at the mill in question by a comparison with the forces he had at the other mills he was running in Ohio, as witness attempted to show in his answer.

Bill of Exceptions No. 11 relates to the evidence of the witness, Bobo, called for plaintiff, and his attempt to prove the instructions given by plaintiff to Bobo in regard to the grading of the lumber. This evidence should have been rejected for the same reasons given for the rejection of the evidence set out in Bill of Exceptions No. 8.

Bill of Exceptions No. 12 relates to evidence of the sawing of ties of a larger size than any provided for in the written contract. The court's action in overruling the objection to this evidence should be sustained, and counsel for the defend-

ants seems to be of the same opinion as they failed to notice it in their brief.

As to Bill of Exceptions No. 13, the first part of the evidence objected to relative to the instructions from plaintiff to his employe, Mr. Bobo, should have been sustained for the reasons given in relation to Bill of Exceptions Nos. 8 and 11. The other questions objected to, relative to the payment by the plaintiff to his hands, were not improper.

Bills of Exceptions Nos. 14, 15, and 16 relate to testimony concerning the contract of March 2nd, 1900, between Suiter & Dunbar and Blessing & Graham for the cutting and hauling of the timber, and what was to be done thereunder. The said contract being properly admitted in evidence, the evidence complained of under these bills of exceptions was properly admitted, the same not being given as construing said written contract, and not inconsistent therewith.

The evidence complained of being admitted, as set out in Bill of Exceptions No. 17, is of the same character as that in Bill of Exceptions No. 6, and was improper for the reasons there given.

Bill of Exceptions No. 18 complains that the court overruled the defendant's motion for the exclusion of all that part of the testimony of the witness, Blessing, in regard to the contract of March 2d, 1900, but points out no particular part thereof. The motion was too indefinite and uncertain, and the court did not err in overruling the motion.

In the course of the trial the defendants asked the court to give to the jury certain instructions in writing, which are set out in full in Bill of Exceptions No. 20, and are numbered therein respectively from 1 to 16, inclusive, of which Nos. 1, 5, 9, 10, 11, 15, and 16 were given by the court. And the court refused to give those numbered 2, 3, 4, 6, 7, 8, 12, 13, and 14. The defendants excepted to the ruling of the court in refusing said last named instructions. No. 2 is as follows: "The jury are hereby instructed that the phrase "unavoidable accident" means that which is not occasioned in any degree, either remotely or directly, by the want of such care or skill as the law holds every man bound to exercise. And the jury are further instructed that an abandonment of the operation or working of the mill by the men or hands in the employ of the plaintiff, hired by him to saw the lumber and

the ties, occasioned by any cause whatsoever, is not "unavoidable accident" within the meaning and contemplation of the law and the true construction of the contract between the plaintiff and the defendants bearing date May 5, 1900, if the jury believe from the evidence that the plaintiff made no effort to get other men or hands in their place to continue to saw lumber and ties under said contract after the abandonment of the operation of the mill by the men already theretofore employed." This instruction fails to present the true issue in the case; it was not a question of the effort made by the plaintiff to get other men or hands in the place of those who had abandoned his work, or of his failure to make any effort, but whether he could, by due diligence, have procured them and continued thereby to prosecute the work according to the terms of his contract. The agreement on the part of plaintiff was that, "the party of the second part shall place a mill on said premises and have the same set within six weeks from the signing hereof, and shall run said mill steadily save when prevented from so doing by unavoidable accident." This was binding upon the plaintiff and it was his duty after the mill was set, to run it and keep it in constant operation and was only excusable when prevented by unavoidable accident. "Things improbable in contracts must be performed; a thing impossible may be excused." *Trustees of Schools* v. *Bennett*, 3 Dutcher N. J. 513. 72 Am. Dec. 373. "The rule is well established, that, where a party by his own contract creates a duty or charge upon himself, his undertaking must be substantially complied with under any and all circumstances. To excuse a performance his contract must provide for it." *Bacon* v. *Cobb*, 45 Ill. 47; *Steele* v. *Buck*, 61 Ill. 343; *Beebe* v. *Johnson*, 19 Wend. 500; *Stees* v. *Leonard*, 20 Minn. 494; *Booth* v. *Mill Co.*, 60 N. Y. 487; *Brewer* v. *Tyson*, 48 N. C. 180; *James River and Kanawha Co.* v. *Adams*, 17 *Grat.* 427. Instruction No. 3 is similar to No. 2 and liable to the same criticism.

Instruction No. 4 tells the jury that if they believe from the evidence that plaintiff began the work of sawing lumber and ties under the contract of May 5, 1900, sometime in the latter part of July, and that his mill had a capacity to saw from ten thousand to twelve thousand feet per day, and that by steadily running said mill plaintiff could have sawed all

the lumber and ties charged by him against the defendants, specified by him in his bill of particulars, on or before November 28, 1900, except any unavoidable accident occurring during that period, and if they further believe from the evidence that a failure to saw the lumber and ties for defendants charged in said account during said period occasioned the defendants any loss or damage as specified in defendants' special plea then they must ascertain from the evidence what such loss or damage amounted to and allow and assess the same in favor of the defendants. This is the issue raised by the special plea and to which the plaintiff filed a general replication, and there being evidence tending to prove his ability to have done such sawing as specified in the instruction, and further evidence tending to prove the damages resulting from such failure to do the sawing, and the jury are properly told that the bare fact, that is, the fact alone that the men quit, was not sufficient to excuse plaintiff for his failure to run the mill steadily. The instruction was clearly right and should have been given.

Instruction No. 6 tells the jury that if they believe from the evidence plaintiff made no active and diligent effort to secure men to take the places of those who quit him in November, 1900, and, by making such effort he could have procured other men in the place of those who quit his employment on account of small-pox, then the bare fact that the men who were at work in his employment sawing the ties and timber under the contract of May 5, 1900, quit his employment because of the alleged prevalence of small-pox in the city of Gallipolis will not excuse the plaintiff for his failure to run the mill steadily after the latter part of November, 1900, until he resumed work in January, 1901. Under the authorities hereinbefore cited this instruction should have been given, as it tells the jury that if they believe from the evidence that by due diligence he could have procured help and continued the work, he was not justified in letting the mill remain idle as he was under contract to keep it in constant operation.

The seventh Instruction is as follows: "The jury are hereby instructed that if they believe from the evidence that the men in the employ of the plaintiff Vale quit the work of sawing lumber and ties for the defendants on or about November 28, 1900, because of the prevalence of small-pox or the re-

puted prevalence of small-pox in the city of Gallipolis, in the State of Ohio, the fact that such men did so quit his plaintiff's employment will not excuse the plaintiff from running his mill steadily thereafter unless the jury further believe from the evidence that the plaintiff actually did make a reasonable and diligent effort to secure other men to run his said mill, after the former men quit his employment." For the reasons stated in relation to instructions Nos. 2 and 3, the closing part of this instruction, to make it good, should have been, "unless the jury further believe from the evidence that the plaintiff could by due diligence have procured sufficient competent force to enable him to carry on his work according to the contract of May 5, 1900, after his men had so quit his employment."

Instruction No. 8 reads as follows: "If the jury believe from the evidence that the men in his, plaintiff's employ, were on the West Virginia side of the Ohio river, and that the reputed prevalence of small-pox was confined to the city of Gallipolis, distant some two miles or more, and if the jury further believe from the evidence that the reputed cases of small-pox in Gallipolis were under quarantine, that steamboats were still running on the Ohio river, that trains were still running on the railroads passing through and by Gallipolis, and that this state of facts prevailing at the time the men in the employ of the plaintiff, working on the saw-mill of the plaintiff located on the Miller Two Mile Creek Farm at the time the said men actually left the said saw-mill and quit working thereon, then the jury should take all these matters into consideration, and if they further believe that there was no imminent danger to the said men in the employ of the plaintiff of the spread of small-pox among them from the city of Gallipolis, then the jury are instructed that the fact that said men did quit the employment of plaintiff and refused to operate said mill, this will not excuse the plaintiff for a failure to run the mill steadily after the latter part of November, 1900, the time when the said men did quit his emment, until January 2, 1901." This instruction, to make it good, should have added to it, "unless they further believe that by exercise of due diligence he could not have procured men," or words of like import.

Instruction No. 12 relates to the sawing of ties of a larger

size than those specified in the contract of May 5, 1900, and tells the jury "that if the plaintiff sawed such ties without any notice to the defendants that he would charge a greater rate than five cents per tie (the price specified for the ties to be sawed under the said contract), then the jury were instructed that they could not allow to the plaintiff any greater sum than the five cents per tie provided for in the said contract." This instruction was properly refused because the ties, differed from those specified in the contract and were larger, were not sawed under said contract.

Instruction No. 13 is bad because it instructs the jury "that if the mill commenced work and running at its full capacity the plaintiff could have sawed the lumber and ties charged for in his account filed with his declaration in this cause by the time the men in his employment actually quit work in the latter part of November, 1900, and if the jury further believe from the evidence that the plaintiff's failure to finish the sawing of such lumber and ties by that time caused the defendants damages to any amount on the specification of damages or any of them set forth in the defendants' special plea filed in this cause, then the jury should assess and allow the defendants damages by reason thereof in such sum as the evidence in this cause shows that the defendants did thereby sustain." This instruction in my opinion is bad because it contemplates the running of the mill "to its full capacity" when the contract provides that he should "run said mill steadily." The requirement that the mill should be run "to its full capacity" places upon the plaintiff a burden which his contract does not authorize, but the majority of the Court being of opinion that the instruction is good, it should have been given and the court erred in refusing it.

Instruction No. 14 reads: "The jury are hereby further instructed that if they believe from the evidence that Graham and Blessing had a contract with Suiter and Dunbar for the hauling of all the timber on the Miller Two Mile Creek Farm and that under their said contract said Graham and Blessing had fifteen months from the time their said contract was made with said Suiter and Dunbar in which to haul said timber to the mill or mills, the jury are hereby instructed that because said Graham and Blessing did have such length of time in which to haul all of the said timber on said

land to the mill or mills to be sawed, this length of time permitted by Suiter and Dunbar to Graham and Blessing, will not excuse any delay on the part of the plaintiff to finish sawing under his contract of May 5, 1900, which plaintiff could have reasonably avoided, and if the plaintiff could have finished his sawing in the exercise of reasonable diligence sooner than the plaintiff actually did conclude the sawing of lumber and ties under said contract of May 5, 1900, and that such delay caused the defendants damages, then the jury are instructed to allow to defendants any such damages as the evidence shows them to have sustained by reason of such delay." This instruction was improper to be given to the jury without a qualification to the effect that "unless it further appears that plaintiff was delayed by the failure of defendants or their employes, Graham and Blessing, to keep the mill supplied with timber." And to the extent of such delay caused by the failure to furnish timber defendants would not be entitled to damages sustained by such delay.

For the reasons herein stated the verdict of the jury is set aside, the judgment reversed, and the case remanded to the circuit court of Mason county for a new trial to be had therein.

*Reversed.*