465 S.E.2d 199

**Danny REED and Sonya Reed, Plaintiffs Below, Appellees,**

v.

**Kathy L. WIMMER, Defendant Below, Appellant.**

No. 22705.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 1995.

Decided Oct. 27, 1995.

cluded, however, from filing an independent civil action to recover additional damages.

**202**

Derek Craig Swope, William B. Flanigan, Sanders, Austin, Swope & Flanigan, Princeton, for Appellees.

Maria Marino Potter, McQueen & Brown, Charleston, for Appellant.

CLECKLEY, Justice:

In this personal injury action, Kathy L. Wimmer, the defendant below and appellant herein, appeals a jury verdict which awarded Danny Reed and Sonya Reed, his wife, the plaintiffs below and appellees herein, damages in excess of $270,000 for injuries suffered in an automobile accident. The defendant appeals the final order of the Circuit Court of Mercer County entered June 3, 1994, which denied her motion for a new trial. The defendant raises two assignments of error: (1) the trial court should have granted a mistrial when insurance coverage was mentioned in front of the jury; and (2) the issue of damages for future medical expenses was not supported by the evidence and should never have been submitted to the jury. After reviewing the record and briefs of the parties, the judgment of the trial court is affirmed, in part; reversed, in part; and remanded for entry of a remittitur order of $10,000 because the award for future medical expenses was not supported by the evidence.

**1.** For purposes of clarity, we will refer to Mr. Reed as the plaintiff and to Mrs. Reed by name.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The evidence shows Danny Reed suffered a back injury on November 29, 1990, when his car was struck by a car driven by the defendant. Over the course of the following weeks, Mr. Reed's back condition worsened to the point he could no longer work as a coal miner. He brought suit to recover damages for these injuries and Sonya Reed, his wife, brought suit for loss of consortium.[1]

The defendant's insurer, Dairyland Insurance Company, settled with the plaintiff for the policy limit of $20,000. The suit proceeded under W.Va.Code, 33–6–31 (1988), as the plaintiff sought to recover damages pursuant to the underinsured motorist carrier provision of the policy with his insurer, Nationwide Mutual Insurance Company (Nationwide).[2] The liability of Kathy L. Wimmer was admitted prior to trial, and she did not appear at trial. Nationwide chose to defend in the name of the defendant. The sole issue at trial was the calculation of damages.

Several medical experts were called at trial. The videotaped deposition of J. Gordon Burch, M.D., a neurologist, was presented. It was Dr. Burch's opinion that the plaintiff suffered lumbosacral and cervical sprain injuries in the accident. He suggested the back pain that extended down the plaintiff's left leg was the result of a "pinched nerve." Dr. Burch found the plaintiff's complaints of pain to be credible.

Clifford H. Carlson, M.D., a physiatrist, was called to testify. Dr. Carlson explained that as a physiatrist his role was to work with persons suffering from orthopedic or neurologic impairments to help them reach their maximum functioning level. It was the opinion of Dr. Carlson that the plaintiff suffered a permanent back injury in the car accident that would limit him to performing only light physical work throughout his life. Upon reviewing the plaintiff's records, Dr. Carlson identified a preexisting back problem. The plaintiff had undergone surgery

**2.** *See generally Postlethwait v. Boston Old Colony Ins. Co.,* 189 W.Va. 532, 432 S.E.2d 802 (1993).

when he was six months old to correct a congenital malformation in his low back. When asked about the plaintiff's future care relating to the injury, Dr. Carlson stated the plaintiff may require medication or physical therapy if his back condition should become exacerbate.

Michael D. Schinnick, Ph.D., a vocational evaluator, a work adjustment specialist who deals with work injury management, testified he found the plaintiff to be totally vocationally disabled. Dr. Schinnick noted the plaintiff was unsuccessful in his attempts to continue working because of his back problems even though he enrolled in a vocational program to attain employment.

The plaintiff's next witness was Michael L. Brookshire, a professor of economics at the West Virginia Graduate College in Charleston. He calculated the plaintiff's lost wages at present value, assuming total vocational disability, at somewhere between $350,753, focusing on the years the plaintiff earned the most money, and $178,302, averaging his high and low income years.

Yogesh Chand, M.D., a neurosurgeon, was unavailable for trial and, by agreement of the parties, his deposition was read to the jury. After reviewing the evidence and examining the plaintiff, it was Dr. Chand's opinion that the plaintiff suffered from a herniated disc even though the results of the MRI test on him indicated a bulging disc instead of a disc herniation. When questioned about possible surgery to correct a herniated disc, Dr. Chand stated the operation has a success rate in the neighborhood of 70 percent and may cost between $7,500 to $10,000. Dr. Chand did not state, however, that the plaintiff would require such surgery.

Edward M. Litz, M.D., a board-certified orthopedic surgeon, testified on behalf of the defendant. Upon examining the plaintiff, Dr.

Litz found two preexisting back conditions. He found the birth defect which required surgery and also noted a defect on the spine due to constant stress on his backbone. He did not find a neurological or nerve-based problem. Dr. Litz stated that the plaintiff was not totally disabled from employment although he admitted the plaintiff could never return to work in the coal mines.

The defendant also called Errol Sadlon, a vocational rehabilitation counselor, to testify. He stated the plaintiff could return to the work force performing "light work" without much difficulty.

After deliberations, the jury returned a verdict awarding the plaintiff $3,000 for past and present pain, suffering, and emotional distress; $4,711.33 for past and present medical expenses; $3,000 for past and present loss of physical function and loss of enjoyment of life; $1,380 for past lost wages; $16,000 for future pain, suffering, and emotional distress; $10,000 for future medical expenses; $16,000 for future loss of physical function and loss of enjoyment of life; and $178,302 for future lost wages. Sonya Reed received $38,000 for loss of consortium.

The defendant's motion for a new trial was denied by order entered June 3, 1994. This appeal ensued.

## II.

## DISCUSSION

### A.

### *Evidence of Liability Insurance*

The defendant argues the trial court erred in not declaring a mistrial when, during cross-examination, the plaintiff intentionally mentioned the word "insurance."[3] An im-

---

**3.** The record reflects the following exchange between Mr. Reed and defense counsel on cross-examination:

"Q. Danny, when in relation to this accident did you employ counsel; how long after the accident was it before you went to a lawyer?

"A. If I remember correctly, it was—it was a few days after that.

"Q. After the accident?

"A. I mean after the accident, yes sir, because—could I tell you why I employed a—an attorney.

"Q. I just want to know when you went.

mediate objection to the plaintiff's comment was not made, but during a recess and out of the presence of the jury, defense counsel approached the bench and moved for a mistrial. The defendant asserts argument on this matter was held out of the presence of the jury in an attempt to prevent reinforcement of the plaintiff's mention of insurance. The defendant contends the plaintiff's comments constitute reversible error, particularly in light of the fact he deliberately placed the matter before the jury.

 The plaintiff responds the trial court was correct in not granting a mistrial considering the fact defense counsel did not make a timely objection to the testimony.[4] The plaintiff argues the testimony was not prejudicial to the defendant, but was elicited only after repeated questioning during cross-examination in which the defendant tried to characterize the plaintiff as litigious.[5]

Furthermore, the plaintiff contends the questioned remarks are admissible under the exceptions to Rule 411 of the West Virginia Rules of Evidence. The plaintiff suggests insurance was mentioned to explain why he sought the advice of an attorney so soon after the accident—because the insurance company would not repair his car. Finally, a cautionary instruction advising the jury to disregard the issue of insurance during deliberations was read by the trial court.

 Reduced to its essence, the defendant contends the evidence offered in this case was directly in defiance of our earlier cases and, because the evidence was introduced by a party, the error cannot be harmless. *See Atkins v. Bartlett*, 101 W.Va. 263,

> "A. Well, I'd like to tell you why.
>
> * * * * * *
>
> "Q. My question was the date that you went?
>
> * * * * * *
>
> "A. —a few days after the accident, I don't know how many days.
> "Q. Okay, and did—did you employ attorneys at that time?
> "A. Yes sir, 'cause the insurance company wouldn't fix my car, or I didn't know the—or whatever. That's—that's the main reason though. I'm sorry.
> "Q. But you went about two or three days after the accident occurred?
> "A. Yes sir."

4. The defendant contends a contemporaneous "protest" was not made because it would have been an unwise tactic drawing the jury's attention to the comment and the very mention of insurance is so prejudicial that delicate judgment is required to determine the appropriate time to object. *See Riggle v. Allied Chemical Corp.*, 180 W.Va. 561, 568, 378 S.E.2d 282, 289 (1989) ("[c]omment to a jury concerning a party's insurance coverage usually constitutes reversible error").

A survey of our earlier cases reveals our jurisprudence has long favored the contemporaneous objection rule but has not addressed an objection and a motion to strike (or request for other curative relief) in identical terms. *See Vale v. Suiter & Dunbar*, 58 W.Va. 353, 52 S.E. 313 (1905). Rule 103(a) of the West Virginia Rules of Evidence, on the other hand, explicitly requires "a timely objection or motion to strike appear[] of record." Although we do not base our decision on this issue, we believe the plaintiff's position has merit. In *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 309, 418 S.E.2d 738,

755 (1992), the appellant failed to make a timely objection but, instead, made a belated motion for a mistrial. This Court stated "[w]e disfavor the technique of not first making a timely objection to the error and instead waiting until a later time to move for a mistrial."

Once it is believed that evidence of a prejudicial nature has been introduced, to satisfy the requirements of Rule 103(a) an objection must be interposed at the time the evidence has been offered and the trial court thus be given an opportunity to rule on the admissibility of the evidence. If the objecting party is of the opinion that the sustaining of the objection is not enough to remove from the minds of the jury the prejudice resulting from the inadmissible evidence, the trial court must then be requested to instruct the jury to disregard the inadmissible evidence:

> "If, the trial court having responded by so instructing the jury, the objector should still consider that the interests of his client have been irremediably prejudiced and that the actions of the trial court, although favorable, have not been effective in removing from the minds of the jury the prejudicial effect of the objectionable matter, then a motion must be made at the time for a mistrial.... Timely objections, followed by appropriate and timely motions, are necessary to preserve such points on appeal." *Anderson v. Jaeger*, 317 So.2d 902, 906–07 (Miss.1975).

We believe there exist better and more substantial reasons to reject this assignment of error; nevertheless, we offer the above observations as a reminder to future litigants that the procedural requirements of Rule 103(a) are mandatory.

5. Although not known by the jury, the plaintiff's references to having trouble with the insurance company were directed not at Nationwide but at Dairyland Insurance.

132 S.E. 885 (1926) (finding that it was reversible error for a party to mention insurance). We disagree. The cases that preexisted Rule 411 have been impliedly repealed unless the prior decisional admissibility rules were codified as part of the West Virginia Rules of Evidence. As we stated at Syllabus Point 7 in *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994):

> "The West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts. These rules constitute more than a mere refinement of common law evidentiary rules, they are a comprehensive reformulation of them."

Under the West Virginia Rules of Evidence, no common law of evidence remains. *See United States v. Abel,* 469 U.S. 45, 51–52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450, 457 (1984) ("[i]n reality, of course, the body of common law knowledge continues to exist, though in the somewhat altered form of a source of guidance in the exercise of delegated powers"). Thus, to the extent that our prior cases have carved out *per se* exclusionary rules that have not been codified in the West Virginia Rules of Evidence, their precedential value has been reduced to a "source of guidance" only; and, to the extent our prior cases are inconsistent or incompatible with the West Virginia Rules of Evidence, they have been implicitly overruled by Rule 402.[6]

This case presents the opportunity to clarify the contours and scope of Rule 411 of the West Virginia Rules of Evidence. Rule 411 is simple and straightforward. It provides as follows:

> "Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, if controverted, or bias or prejudice of a witness."

■ The prohibition in Rule 411 is based on the assumption that jurors who are informed about the insurance status of a party may find that party liable only because the liability will be cost-free to the party, or that jurors will increase the amount of damages in that only an insurance company will be affected adversely. By the adoption of this exclusionary language, Rule 411 forbids two inferences. First, the Rule does not permit the trier of fact to infer that an insured person is more likely than an uninsured person to be careless. Second, Rule 411 rejects the inference that the foresight to take out insurance is indicative of a responsible attitude, making negligence less likely. Although both the inferences and their probative force are highly questionable, under the West Virginia Rules of Evidence, the doctrine is clear, and compliance with Rule 411 and the other rules discussed in this opinion is not a matter of judicial discretion.

■ Like all the categorical exclusionary rules contained within Article IV of the West Virginia Rules of Evidence, Rule 411 does not prohibit all possible uses of evidence regarding a party's insurance coverage.[7] Evidence of insurance may be listed for a variety of relevant purposes. In other words, if evidence of insurance coverage is introduced for purposes other than negligence and wrongful conduct, Rule 411 does not bar its admission. The second sentence of Rule 411 lists several examples for which insurance evidence is not prohibited. The list is not exhaustive and other purposes not

---

**6.** Rule 402 of the Rules of Evidence provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible."

Rule 402 impliedly repeals prior decisional admissibility rules that have not been codified. Even when explicit authority to resolve an evidentiary issue is absent, the clear mandate of Rule 402 is to make relevant evidence admissible and irrelevant evidence inadmissible. The absence of case or decisional law as part of the list of the type of laws in Rule 402 manifests the drafters' intent to repeal uncodified exclusionary rules of evidence. I Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4–2(c) at 215 (3rd ed. 1994). Simply stated, the West Virginia Rules of Evidence "occupy the field."

**7.** See, for example, Rules 407 through 410 of the Rules of Evidence.

listed in Rule 411 have been permitted. *See* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4–11(B) at 431 (3rd ed. 1994) ("[t]he 'other purposes' listed in Rule 411 are illustrative and not exclusive"). Accordingly, the beginning inquiry must always be whether the evidence is offered for a purpose other than negligence or wrongful conduct.

As noted above, ascertaining a legitimate purpose for which the evidence of insurance is offered merely begins the inquiry. The trial court must next determine whether the mention of insurance, while made for a stated purpose other than negligence or wrongful conduct, is in fact relevant to the criteria mentioned in Rule 411. In determining its relevancy, the trial court must find the evidence has sufficient probative value to meet the standard of Rule 401. If it does not, Rule 402 mandates its exclusion. The third step involved in the equation is Rule 403. This Rule requires the trial court to do the requisite balancing and determine whether the probative value of the insurance evidence is outweighed by its prejudicial effect. Similarly, trial courts retain discretion under Rule 403 to allow such proof only where less prejudicial evidence is unavailable.[8] *See State v. Guthrie,* 194 W.Va. 657, 683, 461 S.E.2d 163, 189 (1995) ("[i]n applying Rule 403, it is pertinent whether a litigant has some alternative way to deal with evidence that would involve a lesser risk of prejudice and confusion"). Finally, the trial court upon request must give a limiting instruction pursuant to Rule 105.

■ Thus, under today's decision an insured is presumed to be protected from un-due prejudice from the admission of evidence of insurance at trial if the following requirements are met: (1) the evidence of insurance was offered for a specific purpose other than to prove negligence or wrongful conduct; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court delivered a limiting instruction advising the jury of the specific purpose(s) for which the evidence may be used.

■ We now apply the standards of our Rules of Evidence to the facts of this case. In the course of the plaintiff's cross-examination testimony concerning when he first contacted an attorney, he referred to "the insurance company." On the basis of this reference, defense counsel moved for a mistrial because, as he argues, the jury was improperly invited to think of the availability of a deep pocket insurer footing the bill for any damages assessed. The trial court denied the motion, implicitly concluding the evidence was not introduced in violation of Rule 411, was relevant to rebut the inference suggested by the cross-examiner, and was unlikely to have been perceived by the jury as an indication that there was insurance coverage pertinent to this case.[9] Nevertheless, the trial court gave an instruction to disregard the reference to insurance.[10]

■ Despite the defendant's characterization of the reference to insurance as highly prejudicial, we find the trial court did not commit error in refusing to grant a mistrial. First, and foremost, the decision to declare a

---

[8]. As a general matter, the trial court has broad discretion in deciding whether the probative value "is substantially outweighed by the danger of unfair prejudice[.]" W.Va.Rules of Evid. 403. Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a trial court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect. We do not think the facts of this case present such an extraordinary circumstance.

[9]. Because the reference to insurance was made in the course of explaining the plaintiff's reason for contacting an attorney as soon as he did, and was not made in connection with allegations of

negligence or other wrongful conduct, it does not run afoul of Rule 411. Similarly, we agree with the trial court that it cannot be determined from the record that the plaintiff was referring to Nationwide. The explanation given by counsel in the sidebar conference suggests that the plaintiff was referring to Dairyland.

[10]. The trial court gave an instruction to disregard the reference to insurance. However, we believe because the evidence was offered for a purpose other that negligence or wrongful conduct, the trial court was obligated pursuant to Rule 105 to give only a limiting instruction and not an instruction to disregard.

mistrial is within the sound discretion of the trial court. *See, e.g., State v. Davis,* 182 W.Va. 482, 388 S.E.2d 508 (1989). It is reserved for the most egregious error that cannot be corrected by a curative instruction. "Mistrials in civil cases are generally regarded as the most drastic remedy and should be reserved for the most grievous error where prejudice cannot otherwise be removed." *Pasquale v. Ohio Power Co.,* 187 W.Va. 292, 296, 418 S.E.2d 738, 742 (1992). *See also Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990); *State v. Bennett,* 179 W.Va. 464, 370 S.E.2d 120 (1988).

Second, the testimony at issue does not fall within the prohibition of Rule 411. The statement did not suggest the defendant was insured; only that the plaintiff went to a lawyer because "the insurance company" failed to fix the plaintiff's car. Indeed, Rule 411 contemplates that evidence of insurance may be admissible on issues other than negligence. The trial court found the reference to insurance was a reasonable and relevant invited response demonstrating the motivation of the plaintiff for contacting an attorney as quickly as he did. The prohibition of Rule 411 is not intended to override the equally positive and salutary principle that a party should have a reasonable opportunity to counter and rebut adverse inferences raised by the opposition. Furthermore, we find the comment was in response to interrogation by defense counsel, as found by the trial court, leaving him in a position where he cannot complain under our invited error doctrine. *See Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 599, 396 S.E.2d 766, 780 (1990) ("the appellant cannot benefit from the consequences of error it invited").

Finally, we must determine whether Rule 403 was violated. As suggested above, in considering whether to admit or exclude evidence concerning insurance that is offered for a purpose other than to prove a party acted negligently, the trial court must apply the principles of Rule 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* 10 J. Moore, *Moore's Federal Practice* ¶ 411.04 (2nd ed. 1988 & Supp.1994–95).

The trial court, after hearing arguments from both sides and taking some time to reflect on the issue, explicitly concluded that the evidence was probative and that given the context of the statement,[11] the danger of unfair prejudice was very small because the jury was unlikely to make any inference that "the insurance company" meant the defendant's insurance company. When evidence of insurance is elicited that is fairly conducive to the accomplishment of a relevant and legitimate end in the proceeding, if prejudice results therefrom to the adverse party, it should be deemed unavoidable. "Rule 403 was not designed to allow the blanket exclusion of evidence of insurance absent some indicia of [unfair] prejudice. Such a result would defeat the obvious purpose of Rule 411." *Charter v. Chleborad,* 551 F.2d 246, 249 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 128 (1977). As we have said on numerous occasions, all relevant evidence has some prejudicial effect, but Rule 403 grants relief to a party only when unfair prejudice is demonstrated. *See State v. Rector,* 167 W.Va. 748, 280 S.E.2d 597 (1981); *State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981). The trial judge whose duty it is to be attuned to the trial as it progresses is in the most advantageous position to correctly rule whether unfair prejudice, or the lack of it, has emanated from the comments of the witness. *State v. Derr,* 192 W.Va. at 178, 451 S.E.2d at 744 ("[t]he Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse"); *accord State v. Dillon,* 191 W.Va. 648, 447 S.E.2d 583 (1994).

While it is not possible, or at least not practicable, to enunciate rigid rules concerning the latitude with which a witness may refer to insurance to explain a legitimate concern, there is universal agreement that the matter is within the sound discretion of the trial court. Under the facts of this case, we cannot say that any material prejudice

---

11. The trial court stated: "I think from a general standpoint it's a logical explanation if—if somebody won't pay for your car and you don't have means of doin' it, [you] go to an attorney."

resulted from the reference made to insurance and we must also assume that the jury followed the curative instruction. *See Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618, 630–31 n. 8 (1987) (there is a presumption that curative instructions are effective); *accord State v. Lusk*, 177 W.Va. 517, 354 S.E.2d 613 (1987). If there was any possibility of error, which we cannot identify, it was cured by the instruction to disregard.

In future cases, where feasible, counsel can avoid motions for mistrial by requesting a bench conference prior to the time that he or she feels insurance might be mentioned. In following this procedure, a trial court could require the necessary foundation to be established outside the presence of the jury so that it might determine the admissibility of the evidence without prejudice to the rights of the parties.

To complete our analysis, we believe it is helpful to address the issue of when the mention of insurance in violation of Rule 411 constitutes reversible error. It is apodictic that a new trial is not to be granted absent the existence of error that affects substantial rights. *See* W.Va.R.Evid. 103(a); *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995). Thus, it beggars credulity to argue that mere mention of insurance by a party is *per se* reversible error. Apart from the fairly obvious conclusion that most jurors are aware of the law mandating insurance in West Virginia, there is no consensus among jurists as to which party evidence of insurance adversely affects. *See Safeco Ins. Co. of Am. v. U.S. Fidelity & Guar. Co.*, 101 N.M. 148, 152, 679 P.2d 816, 820 (1984) (trial courts should recognize that prejudicial tendencies of revealing insurance "can go in both directions").

Today with widespread insurance coverage and mandatory insurance laws in many of our states, most courts are reluctant to grant a mistrial or reverse a verdict merely because the issue of insurance was raised and especially when it was raised in ways that were likely to be harmless. The prevailing view among the commentators is that evidence of insurance is rarely prejudicial:

"[T]he underlying soundness of the general rule forbidding disclosure of the fact of insurance has been the object of scathing criticism.... Its costs include extensive and unnecessary arguments, reversals, and retrials stemming from elusive questions of prejudice and good faith. This state of affairs might be tolerable if the revelation of insurance were truly fraught with prejudice. But, ... most jurors probably presuppose the existence of liability insurance anyway, and the heart of the policy nondisclosure is surrendered when jurors are examined about their connection with insurance companies. Consequently, the extent to which evidence of coverage or its absence is prejudicial is unclear. Even the direction in which such prejudice might work is obscure." *McCormick On Evidence* § 210 at 597 (3rd ed. 1984). (Footnotes omitted).

*See also*, 23 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5369 (1980); 2 D. Louisell *Evidence* § 193 (Revised 1985). Indeed, the modern view is:

"In general, the tendency now is to take a less serious view of the disclosure of the existence of liability insurance of the plaintiff, or conversely the absence of coverage of defendant, than formerly, and reversals are rare unless the disclosure is viewed as a deliberate invitation to the jury to base its decision on the presence or absence of insurance. As stated above, it is difficult to perceive how the mere mentioning of insurance could ever be reversible error." 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4–11(A) at 429–30 (3rd ed. 1994).

McCormick's treatise suggests that rather than a mistrial or reversal, a limiting instruction will usually cure any possible prejudice:

"If disclosure of the fact of insurance really is prejudicial, the corrective is not a futile effort at concealment, but the usual fulfillment by the court of its function of explaining to the jury its duty to decide according to the facts and the substantive law, rather than sympathy, ability to pay, or concern about proliferating litigation and rising insurance premiums." *McCormick On Evidence, supra* at 598.

■ On the other hand, we refuse to adopt a *per se* rule that evidence of insurance is always harmless error. "If the Rule is to mean anything, it must have some teeth." 1 Stephen A. Saltzburg, Michael M. Martin, Daniel J. Capra, *Federal Rules of Evidence Manual* 554 (6th ed. 1994). Simply stated "there is no reason to treat erroneous admission of evidence of insurance differently from any other evidentiary error." *Federal Rules of Evidence Manual* at 554. Therefore, we hold that where evidence of insurance is wrongfully injected at a trial, its prejudicial effect will be determined by applying the standard set out in Rule 103(a) of the Rules of Evidence.[12] In addition to the possibility that the jurors are already aware of the existence of insurance, the trial court should consider the relative strength of each of the parties case or the lack of it, whether the jury was urged by counsel or the witness to consider insurance in deciding the issue of negligence or damages, whether the injection of insurance was designed to prejudice the jury, whether the mention of insurance was in disregard of a previous order, and whether a curative instruction can effectively dissipate any resulting prejudice.

■ Under Rule 103(a), to warrant reversal, two elements must be shown: error and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no ways affects the outcome of the trial. Stated conversely, error is prejudicial and ground for reversal only when it affects the final outcome and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable and will be reversed when there is no evidence to support it.[13] Instances in civil cases in which Rule 103(a) may be applied fall generally into two categories: (1) where the error is so slight that no one could have been mislead thereby even if the evidence is in substantial conflict; and (2) where the error is substantial, but from the record it is apparent that no impartial jury could have reached any other verdict.

In conclusion, assuming that the mention of insurance was in violation of Rule 411, we are of the opinion that the situation which exists here is covered by the first example set out above. Accordingly, we find the trial court substantially complied with the rules as we have discussed above and we find no reversible error.

## B.

### *Future Medical Damages*

■ The defendant asserts it was error for the trial court to instruct the jury on the issue of damages for future medical expenses and to allow future medical damages on the jury verdict form in the absence of evidence establishing to a reasonable degree of medical certainty that the plaintiff would incur those expenses. Before a verdict may be reversed on the basis of excessiveness, the trial court must make a detailed appraisal of the evidence bearing on damages. Because the verdict below is entitled to considerable deference, an appellate court should decline to disturb a trial court's award of damages on appeal as long as that award is supported by some competent, credible evidence going to all essential elements of the award. Syllabus Point 15 of *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974), states:

"To warrant a recovery for future medical expenses, the proper measure of damages is not simply the expenses or liability

---

12. Rule 103(a) of the Rules of Evidence provides, in pertinent part: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"

13. We have repeatedly stated:
"The appropriate test for harmlessness articulated by this Court in *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980), is whether we can say with fair assurance, after stripping the erroneous evidence from the whole, that the remaining evidence was independently sufficient to support the verdict and that the judgment was not substantially swayed by the error. The outcome of the harmless error analysis is fact specific." *McDougal v. McCammon*, 193 W.Va. 229, 238–39, 455 S.E.2d 788, 797–98 (1995).

which shall or may be incurred in the future but it is, rather, the reasonable value of medical services as will probably be necessarily incurred by reason of the permanent effects of a party's injuries."

None of the physicians who appeared at trial or whose depositions were read to the jury testified as to the plaintiff's need for future medical expenses. Dr. Chand, in answer to a hypothetical question, stated that surgery to repair a herniated disc would cost in the range of $7,500 to $10,000. However, Dr. Chand did not state the plaintiff required the surgery or would probably incur the expense of the surgery in the future. Accordingly, we find it was error to submit this issue to the jury in the absence of evidence supporting an award for future medical damages. The proper remedy for this error is for this Court to order a remittitur of that portion of the recovery and sustain the remainder of the judgment below. Syl. pt. 2, *Earl T. Browder, Inc. v. County Court of Webster County*, 145 W.Va. 696, 116 S.E.2d 867 (1960).

### III.

### CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Mercer County is affirmed, in part; reversed, in part; and remanded to the circuit court with directions to enter a remittitur order of $10,000 for the portion of the verdict for future medical damages.

Affirmed, in part; reversed, in part; and remanded with directions.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.