**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Murray American Energy, Inc.,**
**Employer Below, Petitioner**

**v.)**    **No. 24-4**    (JCN: 2018016155)
(ICA No. 23-ICA-233)

**Connie Titus,**
**Claimant Below, Respondent**

# MEMORANDUM DECISION

Petitioner Murray American Energy, Inc. appeals the November 1, 2023, decision of the West Virginia Intermediate Court of Appeals ("ICA") affirming the May 4, 2023, decision of the Workers' Compensation Board of Review ("Board of Review"). In its decision, the Board of Review reversed the claim administrator's November 23, 2021, order granting an additional 0% permanent partial disability and granted the claimant an additional 9% for a total award of 27% permanent partial disability. Respondent Connie Titus filed a timely response.[1] The issue on appeal is whether the Board of Review properly granted an additional 9% permanent partial disability. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the ICA's decision is appropriate. *See* W. Va. R. App. P. 21.

In January 2018, the claimant, a coal miner, was involved in a mantrip collision in the course of and resulting from her employment. In a series of orders, the claim was held compensable for multiple injuries. The claimant underwent several independent medical evaluations with David L. Soulsby, M.D. In July 2018, Dr. Soulsby found that the claimant was at maximum medical improvement regarding the cervical and lumbar spines and the left shoulder. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*"), and West Virginia Code of State Rules § 85-20 (2006) ("Rule 20"), Dr. Soulsby opined that the claimant had 4% impairment related to the cervical spine; 4% impairment related to the lumbar spine; and 5% impairment related to the left shoulder after apportionment due to preexisting conditions. Therefore, Dr. Soulsby found that the claimant's total impairment for the compensable injury was 13%.

---

[1] The employer is represented by counsel Aimee M. Stern, and the claimant is represented by counsel J. Thomas Greene Jr. and T. Colin Greene.

In January 2019, Dr. Soulsby determined that the claimant was at maximum medical improvement regarding her right hip. Utilizing the AMA *Guides*, Dr. Soulsby opined that the claimant had 2% impairment related to the right hip. Dr. Soulsby combined this 2% impairment rating with the previously calculated impairment ratings and determined that the claimant had a total impairment of 15% for her compensable injury. In March 2019, Dr. Soulsby found that the claimant had 4% impairment related to her right knee. Dr. Soulsby combined this 4% impairment rating with the previously calculated impairment ratings and opined that the claimant had a total impairment of 18% related to the compensable injury according to the AMA *Guides*' combined values chart. In March 2019, the claim administrator granted the claimant an award of 18% permanent partial disability.

In November 2021, the claimant underwent an independent medical evaluation with Joseph E. Grady II, M.D. Using the AMA *Guides* and Rule 20, Dr. Grady found that 4% impairment related to the cervical spine, 4% impairment related to the lumbar spine, 9% impairment related to the left shoulder after apportionment due to preexisting conditions. Combining the remaining impairment ratings, Dr. Grady determined that the claimant had a total impairment of 18% for the compensable injury. The claim administrator granted an additional award of 0% permanent partial disability based on Dr. Grady's report.

The claimant underwent an independent medical evaluation with Bruce A. Guberman, M.D., in June 2022. Using the AMA *Guides* and Rule 20, Dr. Guberman found that the claimant had 8% impairment related to the cervical spine, 8% impairment related to the lumbar spine, and 13% impairment related to the left shoulder. Combining these impairments, Dr. Guberman determined that the claimant had a total impairment of 27% for the compensable injury. Dr. Guberman did not apportion any impairment due to preexisting conditions.

In May 2023, the Board of Review found that Dr. Guberman's report was more persuasive than the reports of Drs. Soulsby and Grady and granted the claimant an additional 9% for a total award of 27% permanent partial disability. In *Murray American Energy, Inc. v. Titus*, No. 23-ICA-233, 2023 WL 7203393 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision), the ICA affirmed, finding that the Board did not clearly err in determining that Dr. Guberman authored the more persuasive report. *Id.* at *3.

This Court reviews questions of law de novo, while we accord deference to the lower tribunal's findings of fact unless the findings are clearly wrong. *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024); *Conley v. Worker's Comp. Div.*, 199 W.Va. 196, 199, 483 S.E.2d 542, 545 (1997) (noting that, while legal determinations are reviewed de novo, the "clearly wrong" and "plainly wrong" standards of review apply to evidentiary findings to which deference is given if supported by substantial evidence). Applicable here, West Virginia Code § 23-4-9b provides that, unless there is a permanent total disability, a preexisting disease or injury "shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury." However, West Virginia Code § 23-4-9b requires not only a preexisting condition, but also a definitely ascertainable impairment resulting from the preexisting condition for apportionment to occur. *Duff*, 250 W. Va. at ___, 905 S.E.2d at 537.

On appeal, the employer argues that the medical evidence supports the decisions of Drs. Soulsby and Grady to apportion some of the claimant's impairment to preexisting conditions. The Board of Review found that Drs. Soulsby's and Grady's reports were less persuasive than Dr. Guberman's report, in part, because Drs. Soulsby and Grady based their apportionment decisions solely on imaging studies. *Titus*, 2023 WL 7203393, at *3. However, the Board was clearly wrong in finding that Dr. Soulsby's apportionment of the left shoulder impairment was based solely on imaging studies. Regarding the left shoulder, Dr. Soulsby noted that the claimant had previously undergone a bilateral mastectomy, which is known to cause restricted range of motion in the shoulders. Dr. Soulsby evaluated the range of motion loss in both shoulders to distinguish between preexisting impairment and injury-related impairment. On that basis, Dr. Soulsby found that apportionment of the left shoulder impairment was appropriate, attributing 5% impairment to residuals from the claimant's prior surgical procedure and 5% impairment to the compensable injury.

While the Board of Review clearly erred in finding that Dr. Soulsby apportioned the left shoulder impairment solely due to imaging studies, the Board also found that Dr. Guberman's report was more persuasive than the reports of Drs. Soulsby and Grady for a second reason. *Id.* The Board determined that Dr. Soulsby and Grady apportioned impairment despite the fact that the medical evidence did not show that preexisting conditions limited the claimant's daily activities and ability to work, which goes to West Virginia Code § 23-4-9b's requirement that a definitely ascertainable impairment must result from the preexisting condition for apportionment to occur.

Regarding this statutory requirement, Dr. Guberman made two pertinent findings. Initially, Dr. Guberman disagreed with Dr. Soulsby and found that the claimant had normal range of motion in the uninjured right shoulder. Next, Dr. Guberman found that there was no reasonable basis to apportion for the preexisting conditions because there was (1) no evidence that the claimant had any symptoms or treatment for the preexisting conditions, and (2) no evidence that the preexisting conditions affected her activities of the daily living or ability to work prior to the compensable injury. Our review of this case supports Dr. Guberman's findings as the record contains no evidence that, prior to her work injury, the claimant suffered symptoms from or underwent treatment for her preexisting conditions, or that those conditions limited her daily activities and ability to work. Thus, we determine that the ICA properly found that the Board of Review was not clearly wrong in finding that Dr. Guberman's report was more persuasive than the reports of both Drs. Soulsby and Grady based on Dr. Guberman appropriately refraining from apportioning impairment due to asymptomatic preexisting conditions. Therefore, we find that the Board's erroneous finding that Dr. Soulsby apportioned the left shoulder impairment solely due to imaging studies was harmless as it did not impact the outcome of the case. *Reed v. Wimmer*, 195 W.Va. 199, 209, 465 S.E.2d 199, 209 (1995) ("[E]rror is prejudicial and ground for reversal only when it affects the final outcome and works adversely to a substantial right of the party assigning it."). Accordingly, we conclude that the ICA did not err in affirming the Board of Review's decision reversing the claim administrator's order and granting the claimant an additional 9% for a total award of 27% permanent partial disability.

Affirmed.

**ISSUED: January 14, 2025**


**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Charles S. Trump IV

**DISSENTING:**

Justice C. Haley Bunn


BUNN, Justice, dissenting:

I dissent to the majority's resolution of this matter. Consistent with my opinion, concurring in part and dissenting in part, in *Duff v. Kanawha County Commission*, 250 W. Va. 510, ___, 905 S.E.2d 528, 548 (2024), I would remand this case to allow the employer, Murray American Energy, Inc., an opportunity to meet its burden, recently established in Syllabus point 6 of *Duff,* to prove apportionment is warranted pursuant to West Virginia Code § 23-4-9b.