664 S.E.2d 667

STATE of West Virginia ex rel. NATION-
WIDE MUTUAL INSURANCE COM-
PANY, Petitioner,

v.

The Honorable Mark A. KARL, Judge of
the Circuit Court of Marshall County
and Stacey Meadows, Respondents.

No. 33651.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 8, 2008.

Decided Feb. 14, 2008.

Dissenting Opinion of Chief Justice
Maynard June 27, 2008.

Amy Pigg Shafer, W. Stephen Flesher, Law Offices of W. Stephen Flesher, Nationwide Trial Division, Wheeling, WV, for Petitioner.

Jill Cranston Bentz, Sarah Ghiz Korwan, Dinsmore & Shohl, LLP, Charleston, WV, for Amici Curiae The West Virginia Insur-

ance Federation, The Property Casualty Insurers of America and The American Insurance Association.

James G. Bordas, III, James B. Stoneking, Bordas & Bordas, PLLC, Wheeling, WV, for Respondent Stacey Meadows.

BENJAMIN, Justice.

Nationwide Mutual Insurance Company (hereinafter "Nationwide") filed the instant petition for writ of prohibition asking this Court to prohibit the Circuit Court of Marshall County, West Virginia, from identifying defense counsel's office as "Nationwide Trial Division" during voir dire. For the reasons set forth herein, we decline to issue the requested writ.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On April 23, 2007, the Circuit Court of Marshall County convened for a trial regarding a claim for underinsured motorists coverage to recover damages incurred in a February 28, 1999, automobile accident. Having previously settled for the limits of liability insurance available under the alleged tortfeasor's insurance policy ($50,000), Plaintiff Stacey Meadows (hereinafter "Ms. Meadows") proceeded with a claim for underinsured motorists coverage under a policy of insurance issued by Nationwide insuring the vehicle in which she was a passenger at the time of the February 28, 1999, automobile accident.[1] Nationwide was defending the claim in the name of the alleged tortfeasor as permitted by W. Va.Code § 33–6–31(d) (1998). Nationwide admits that at the time of the scheduled trial, Ms. Meadows was claiming medical special damages in the amount of $20,009.86 and had been diagnosed with myofascial pain syndrome, nocturnal myclonus (nighttime jerking) and a traumatic brain injury.

Prior to empaneling the jury, the trial court convened in chambers for a hearing on proposed voir dire. At that time, counsel for

1. The limits of underinsured motorist coverage available under the Nationwide policy are $50, 000/$100,000.

Nationwide objected to Plaintiffs' proposed voir dire question number 12 which read:

Do any of you know Amy Pigg Shafer, W. Stephen Flesher, Teresa D. Daniel, Brian E. Bigelow, Desiree H. Divita, Andrew F. Workman, Asak U. Khan, Michelle Winiesdorffer–Schirripa, Myra B. Lambert, Sarah E. Saul, Amanda Henderson, Wanda S. Buehner or any other member of the Law Offices of W. Stephen Flesher, *Nationwide Trial Division,* who have offices in Wheeling, Beckley, and Charleston, West Virginia, including attorneys, paralegals, secretaries, and other office staff, or their spouses, children, parents, brothers or sisters?

(Emphasis added). Defense counsel objected to proposed question number 12 because it identified counsel's office as *Nationwide Trial Division*[2] and thus, interjected the issue of insurance into the trial and deprived Nationwide of its right to defend in the name of the tortfeasor.[3] Nationwide argued to the trial court that the only reason defense counsel's office is referred to as "Nationwide Trial Division" outside of the courtroom was that, as a captive firm, it was bound to so identify itself pursuant to an ethics opinion issued by the West Virginia Lawyer Disciplinary Board. In response, plaintiff's counsel argued that witnesses and the community know the firm as "Nationwide Trial Division" as the individual firm name changes periodically.[4]

Upon being informed that the trial court intended to identify defense counsel's office as "Nationwide Trial Division" during voir dire, defense counsel requested that the trial be held in abeyance in order to request a writ of prohibition from this Court as it was "a critical issue for [defense counsel's] office, for captive counsel in the State of West Virginia." In an effort to avoid a continuance, plaintiff's counsel offered to withdraw the reference to "Nationwide Trial Division" in the proposed voir dire. The trial court refused to permit plaintiff to withdraw the

---

2. An objection was also raised to the inclusion of the names of paralegals in defense counsel's office in the question. That objection was overruled. However, the trial court ruled that it would specifically identify those persons as paralegals as opposed to attorneys when posing the question to the jury.

3. A similar objection was made to plaintiff's proposed voir dire question number 14 which asked: "Are you or any of your family members employed by Nationwide Insurance company or any of its affiliates?" Though the trial court's ruling overruling Nationwide's objection to this proposed voir dire question is mentioned in passing in Nationwide's Memorandum of Law in Support of its Petition for Writ of Prohibition, Nationwide's Petition for Writ of Prohibition relates solely to the trial court's ruling to identify defense counsel's office as "Nationwide Trial Division" during voir dire.

4. The substance of the exchange on this issue was as follows:

Ms. Shafer: ... I also object to Nationwide Trial Division being identified during voir dire. Let's see if that's also mentioned in 12. Thirteen also refers to the paralegals again, but I don't think it mentions Nationwide Trial Division being identified.
The Court: But is that not the name of the firm?
Ms. Shafer: The name of the firm is The Law Offices of W. Stephen Flesher. The only reason Nationwide Trial Division has ever been on there is because that's what the ethics opinion says has to be on there, but if I recall the ethics opinion correctly, it speaks to how on things like pleadings and so forth, the—so that the juror's wouldn't, you know, know about captive firms.
Mr. Bordas: Your Honor, with regard to that, you know, its on their letterhead. When they call up potential witnesses that may be witnesses in their case—if their independent witnesses, or whatever, that's how they—even when I've called their offices, they've referred to themselves as Nationwide Trial Division. I think that when they're commonly known in the area as Nationwide Trial Division, that's the only way to ferret out whether or not any of these people have had contact with them. The offices of Stephen Flesher is not really what they are known as. That changes. Its been Duane Tinsley; its been—who is the one fellow who was just here recently before him?
Ms. Shafer: Dana Eddy.
Mr. Bordas: Dana Eddy its been referred to. It's now Flesher. It changes every year depending on who's there. Everybody knows it as Nationwide Trial Division. We have to find out if they know any of these people....
The Court: I'm going to ask the question as its framed. Objection and exception is noted on behalf of the defendant. Any other objections?
Ms. Shafer: With respect to the Nationwide Trial Division, I am going to need to probably consult with my client at some point before we start.
The Court: I'm sorry? When you say your client, are you talking about [the defendant], or are you talking about—
Ms. Shafer: No. I'm going to have to talk with somebody from Nationwide.

reference, indicating that it intended to ask the question because, after reflection, it was an issue that needed to be resolved in light of the number of cases before the trial court in which Nationwide Trial Division was involved.

Accordingly, the April 23, 2007, trial was continued and Nationwide filed its Petition for Writ of Prohibition with this Court on September 6, 2007.[5] On October 11, 2007, this Court entered a rule to show cause why a writ of prohibition should not be awarded prohibiting the trial court from identifying defense counsel's office as "Nationwide Trial Division" to the jury panel during voir dire returnable on January 8, 2008.

## II.

### STANDARD OF REVIEW

Nationwide argues that the trial court grossly abused its discretion by overruling its objection to the identification of defense counsel's office as "Nationwide Trial Division" during voir dire and by further refusing to permit plaintiff to withdraw such identification from her proposed voir dire. We have long held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53–1–1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977). Accordingly,

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of

law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Voir dire inquires are left to the sound discretion of the trial court and are subject to review only to the extent such discretion is abused. *See* Syl. Pt. 1, *Michael v. Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994); *State v. Harshbarger*, 170 W.Va. 401, 404, 294 S.E.2d 254, 257 (1982). In light of these standards, we turn to the issue presented herein.

## III.

### DISCUSSION

Nationwide asserts that the Circuit Court of Marshall County should be prohibited from identifying defense counsel's office as "Nationwide Trial Division" during voir dire because it improperly interjects the issue of insurance coverage for the claims asserted into the trial. In doing so, Nationwide relies upon two primary arguments. First, Nationwide argues that an opinion governing the ethical responsibilities of captive law firms operating in West Virginia issued by the West Virginia Lawyer Disciplinary Board, L.E.I. 99–01, supports its position that counsel should not be identified as "Nationwide Trial Division" during voir dire. Second, Nationwide argues that such identification violates its statutory right under W. Va. Code § 33–6–31(d) to defend underinsured motorist claims in the name of the alleged tortfeasor. Echoing the arguments of Nationwide, *amici curiae*, the West Virginia Insurance Federation, the Property and Casualty In-

---

**5.** The trial court's order reflecting its rulings on objections to the proposed voir dire was entered on July 7, 2007.

surers Association of America and The American Insurance Association, additionally argue that identification of counsel's office as "Nationwide Trial Division" during voir dire is prohibited by Rule 411 of the *West Virginia Rules of Evidence* because it places the issue of insurance before the jury.

In response, Ms. Meadows argues that it is the evidence of insurance coverage during trial which is prohibited, not the correct identification during voir dire of counsel's firm in the manner in which is holds itself out to the public. Such correct identification, according to Ms. Meadows, is necessary in order to determine juror bias. Ms. Meadows points out the concerns expressed by the Lawyer Disciplinary Board in its opinion governing captive law firms and notes that Nationwide was aware of the ramifications, including disclosure requirements, of utilizing a captive law firm when it chose to do business in this manner in West Virginia. Further, Ms. Meadows cites to cases from two jurisdictions, *Richter v. Kirkwood*, 111 S.W.3d 504 (Mo.Ct.App.2003) and *Stone v. Stakes*, 755 N.E.2d 220 (Ind.Ct.App.2001), as supporting her argument that the identification of counsel's office as "Nationwide Trial Division" during voir dire is proper. After thorough consideration of the arguments of the parties and our own independent research, we conclude that a writ of prohibition should not issue herein.

### A.

### L.E.I. 99–01

█ Nationwide has placed great emphasis upon a formal advisory ethics opinion, L.E.I. 99–01, regarding the practice of captive law firms in West Virginia issued by our Lawyer Disciplinary Board in 1999. At the outset we must note that opinions issued by the Lawyer Disciplinary Board are not binding upon this Court. *See* R. Lwyr. Disc. Pro. 2.16(d) (1994).[6] That said, we recognize first

that the ethics opinion relied upon by Nationwide sets forth many concerns regarding the practice of captive law firms, including serious conflict of interest issues. Secondly, we note that Nationwide's blind reliance upon this opinion to support its argument that the trial court must be prohibited from identifying "Nationwide Trial Division" during voir dire is misplaced. A complete and fair reading of this ethical advisory opinion reveals its emphasis on the inherent conflict of interest between a captive attorney's loyalty to his or her direct employer, the insurer, and the *insured* who is being represented. Indeed, the opinion set forth "to answer two basic questions: (a) May an insurance company use in-house attorneys to represent its insured under the Rules of Professional Conduct; and (b) is the operation of a captive law firm misleading to the public in violation of the Rules of Professional Conduct." L.E.I. 99–01, pp. 1–2.

The emphasis of the opinion is upon protecting the insured's entitlement to loyalty and confidentiality and the inherent conflict which arises when the attorney's sole employer is the insurer providing the insured's defense. Although Nationwide argues that permitting reference to "Nationwide Trial Division" during voir dire treats captive firms differently than outside counsel retained to represent insureds, there is a fundamental difference between captive counsel and outside counsel. As stated by the Lawyer Disciplinary Board, "[t]his is an area in which outside counsel stand in a different position. They are not subject to review and supervision by a lawyer not from their own firm and not licensed in West Virginia." L.E.I. 99–01, p. 6. Additionally, unlike captive counsel, outside counsel are not solely dependent upon a particular insurer for their income and employment and can perform work for other clients and insurers.

Nationwide's reliance upon this ethics opinion is primarily based upon the opinion's

---

**6.** Rule 2.16(d) of the Rules of Lawyer Disciplinary Procedure provides that "A formal advisory opinion is binding on the Hearing Panel of the Lawyer Disciplinary Board in any subsequent proceeding involving the requesting lawyer, but is not binding on the Supreme Court of Appeals." We observe that the issue of whether captive law

firms should be permitted in West Virginia is not an issue in this proceeding seeking extraordinary relief. We do, however, take this opportunity to express our serious reservations with the practice of the use by insurance companies of in-house attorneys to represent its insureds and the operation of captive law firms in West Virginia.

advice regarding disclosure actions which minimize the misleading nature of a captive firm's name. The opinion advises that a law firm's affiliation with an insurer should be disclosed "on their letterhead, business cards, phone book identification, phone answering method, office entrances and pleadings and to explain this relationship to each client. One exception to this would be a pleading or other communication that might be submitted to a jury, so that jurors will not be made aware that a party had insurance." L.E.I. 99–01, pp. 12–13. It is upon this last sentence that Nationwide hinges its argument that its compliance with the ethics opinion's disclosure guidelines also precludes identification of "Nationwide Trial Division" during voir dire. A statement that the disclosure need not be made upon a document which might be submitted to the jury does not necessarily preclude such identification for the voir dire purpose of soliciting information to determine juror bias.

■ We have previously held that "[t]he official purposes [sic] of *voir dire* is to elicit information which will establish a basis for challenges for cause and to acquire information that will afford the parties an intelligent exercise of peremptory challenges." Syl. Pt. 2, in part, *Michael v. Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994). A proper subject for voir dire is whether a juror has a relationship with a law firm involved in the litigation or one of its employees such that the juror may be biased for or against the party represented by that firm. It is not lost upon this Court that captive law firms operating in this State often change their names on a regular basis, with the only consistency being the insurer affiliation. Indeed, the Court is aware that Nationwide Trial Division has operated under a minimum of three different law firm names in the last decade alone. Unlike national or regional law firms which operate under a consistent name in all jurisdictions, the name of captive law firms often vary by jurisdiction with the only consistency

being the relationship with the insurer. In allowing the voir dire question number 12, the trial court recognized that defense counsel's office is known in the community as Nationwide Trial Division and that prospective jurors would recognize that name.[7] We agree with the trial court that inquiry into whether a prospective juror is associated in some manner with Nationwide Trial Division is a proper subject of voir dire to the extent it is intended and needed to reveal potential juror bias.

**B.**

**Impact of Rule 411**

■ In supporting Nationwide's position that the trial court should be prohibited from using the phrase "Nationwide Trial Division" during voir dire to identify defense counsel's law firm, *amici curiae* rely heavily upon Rule 411 of the *West Virginia Rules of Evidence* arguing that it prohibits the introduction of the existence of insurance at trial in most instances. We are unpersuaded by this argument. Voir dire is not the taking of evidence nor does the language of Rule 411 itself prohibit the mention of insurance for a purpose other than to prove that a person acted negligently or wrongfully. Rule 411 provides:

> *Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully.* This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, if controverted, or bias or prejudice of a witness.

W. Va. R. Evid. 411 (1994) (emphasis added). It is unclear how mentioning the phrase "Nationwide Trial Division" during voir dire weighs upon the issue of whether the defendant acted negligently or wrongfully or otherwise violates Rule 411's prohibitions.[8]

---

7. Prospective jurors are likely to associate their experiences with Nationwide Trial Division rather than a particular firm name, as the firm name may change and Nationwide Trial Division is the consistent identifying mark of the practice, regardless of the particular "firm name" being utilized at a given time.

8. In *Reed v. Wimmer*, 195 W.Va. 199, 205, 465 S.E.2d 199, 205 (1995), this Court clarified the scope and contours of Rule 411 explaining;

> The prohibition in Rule 411 is based on the assumption that jurors who are informed about the insurance status of a party may find

Our conclusion that permitting identification of a captive firm's affiliation with a particular insurer during voir dire is not prohibited by Rule 411 is consistent with findings in other jurisdictions. In *Stone v. Stakes,* 755 N.E.2d 220, 222 (Ind.Ct.App.2001), the Indiana Court of Appeals, discussed this very issue finding:

> Requiring captive law firms to indicate their association with an insurance company as part of their name and allowing opposing counsel to identify the firm by name to prospective jurors does not impinge upon Rule 411's decree that liability insurance is not admissible "upon the issue whether the person acted negligently or otherwise wrongfully" where, as here, the reference is brief, occurs during voir dire, and is not demonstrably calculated to unduly prejudice the jury.

> We agree with [appellant/defendant's] assertion, and so stated in our opinion, that there may be other, equally effective ways to uncover juror bias or interest in an insurance company than directly stating the name of the captive law firm. However, the mere fact that it is possible does not mean that when counsel discloses the name of the firm, he or she is necessarily attempting to deliberately interject the issue of insurance into the trial. Even assuming Rule 411 is relevant to voir dire, the rule clearly allows the interjection of a reference to insurance for such other purposes as ownership, control, bias, or prejudice. The issue does not turn on whether the mention of a captive law firm's name was deliberate or inadvertent, but rather on whether the mention was deliberately done in a manner to suggest the defendant acted negligently.

This opinion reaffirmed, on rehearing, the court's earlier decision in *Stone v. Stakes,* 749 N.E.2d 1277 (Ind.Ct.App.2001). In the earlier decision, the court eloquently explained the impact utilization of a captive law firm has on the ability to mention insurance during voir dire:

> Although Rule 411 is an evidentiary rule not strictly applicable to voir dire, it provides some guidance in this area regarding what categories of inquiry are acceptable. Rule 411 does not limit the allowable evidence regarding insurance only to financial interest, but also allows evidence going to bias or prejudice. Thus, a question regarding a juror's relationship, financial or otherwise, with a specific insurance company on voir dire examination is not error if the question is asked in good faith....

> That [plaintiff/appellee's] counsel referred to the attorney representing [defendant/appellant] as a member of the "Litigation Section of Warrior Insurance Group" does not tie [defendant/appellant] any more directly to insurance than the admittedly proper questioning of the jurors about a financial interest in Warrior or Gallant. Any prejudice due to the reference is entirely too speculative to require reversal in this case. There may have been equally effective ways to find out if prospective jurors have had any dealings with [defendant's] attorney or attorneys in his office. However, we do not believe that [plaintiff/appellee's] counsel, reading from an appearance form handed to him that morning which, for the first time, identified [defendant/appellant's] counsel as a member of a captive law firm of Warrior Insurance, was deliberately attempting to inform the jury that [defen-

that party liable only because the liability will be cost-free to the party, or that jurors will increase the amount of damages in that only an insurance company will be affected adversely. By the adoption of this exclusionary language, Rule 411 forbids two inferences. First, the Rule does not permit the trier of fact to infer that an insured person is more likely than an uninsured person to be careless. Second, Rule 411 rejects the inference that the foresight to take out insurance is indicative of a responsible attitude, making negligence less likely. Although both the inferences and their probative force are highly questionable, under

the West Virginia Rules of Evidence, the doctrine is clear, and compliance with Rule 411 and the other rules discussed in this opinion is not a matter of judicial discretion.

Like all the categorical exclusionary rules contained within Article IV of the West Virginia Rules of Evidence, Rule 411 does not prohibit all possible uses of evidence regarding a party's insurance coverage. Evidence of insurance may be listed for a variety of relevant purposes. In other words, if evidence of insurance coverage is introduced for purposes other than negligence and wrongful conduct, Rule 411 does not bar its admission.

dant/appellant] was covered by liability insurance and prejudice the venire in favor of a verdict for his client. If this were a case which involved two independent law firms, rather than an independent law firm and a captive law firm, there is no question that it would have been appropriate for [plaintiff/appellee's] counsel to have asked the venire if any of them knew, had been represented by, or had dealings with not only the attorney present in court, but any other member of his or her firm, naming that firm. It is entirely conceivable, especially in this day of increasingly common lateral moves from firm to firm, that a prospective juror would not know any of the current attorneys in a firm, but would have known attorneys previously associated with that firm. There could be prejudice for or against not only individual members of a firm but also a firm itself. In this particular instance, it just so happens that the "firm" is actually an insurance company. Moreover, counsel for [defendant/appellant] acknowledged at oral argument that if he were in-house counsel for an insurance company, rather than a member of a captive law firm, it would have been appropriate for [plaintiff/appellee's] counsel to identify him as in-house counsel for that insurance company. We believe that the difference between in-house counsel and members of a captive law firm is a difference without a distinction. In both situations, counsel is employed by an insurance company and represents the interests of that company. Thus, if it would be appropriate to identify in-house counsel by his or her affiliation with a company, it is equally appropriate to identify a member of a captive law firm in such a way.

*Stone v. Stakes*, 749 N.E.2d at 1281–2 (footnote omitted). A similar finding and analysis was made by the Missouri Court of Appeals in *Richter v. Kirkwood*, 111 S.W.3d 504 (Mo. Ct.App.2003). Therein, the Missouri Court stated:

Allstate, as defendant's insurer, chose to use employed in-house counsel to meet its contractual obligation to provide defendant's defense. The inquiry plaintiffs' attorney made on voir dire was tailored to ascertain whether defendant's attorney's status as an employee of Allstate would result in an interest or bias of panel members that would be adverse to plaintiffs.

In *Page v. Unterreiner*, 106 S.W.2d 528 (Mo.App.1937), this court explained:

If, in attacking the credibility of a witness in a case, it is necessary to show that he is employed by an insurance company interested in the outcome of the case, it is not reversible error to allow such showing for the reason that it is proper to show the possibility of bias and prejudice on the part of the witness. The thing that determines the admissibility of such evidence is whether or not it tends to prove any issue in the case or is relevant or material for any legitimate purpose, and if so it cannot be excluded on the ground that it may tend to prejudice the defendant, or because it tends to show that the defendant had indemnity insurance.

The same rationale is apropos with respect to voir dire inquiry of prospective jurors. It was within the trial court's discretion to allow plaintiffs' attorney to show that defendant's attorney was an employee of Allstate to ascertain whether that circumstance would result in bias or prejudice on the part of prospective jurors. Plaintiffs' attorney treated the situation with respect to defendant's trial attorney the same as he did regarding the other attorney who was not employed by Allstate but who had deposed a witness and would be identified to the jury by means of the videotaped deposition. Plaintiffs' attorney identified the organization, be it law firm or corporate insurance company, for whom each worked, as well as the other lawyers who worked in the respective offices. He made the same inquiry concerning any relationship the panel members might have had with each employer and each member of the two offices.

This court holds that if such an inquiry is made in good faith and in a manner that does not transmogrify the issue in the case from whether defendant was liable to whether the defendant had insurance, a

trial court does not abuse its discretion in permitting the inquiry.

*Richter*, 111 S.W.3d at 508–9 (internal citations omitted). We agree with the reasoning utilized by the Indiana and Missouri courts and similarly conclude that Rule 411 does not preclude the disclosure of captive firm's affiliation with an insurer during voir dire. To the contrary, such disclosure may be necessitated in order to conduct a full and complete voir dire and discover any potential juror bias for or against a party or attorney or law firm. Full and complete disclosure of a juror's knowledge, association or affiliation with a law firm should not be limited by the law firm's decision to do business as a captive law firm. Just as proper voir dire includes questioning regarding juror knowledge, association or affiliation with outside counsel's offices, attorneys, and employees, it also includes questioning regarding juror knowledge, association or affiliation with a captive firm's offices, attorneys and employees, including the identification of them by the name in which they are known in the community. Here, the insurer made a choice to utilize captive counsel. Having done so, the insurer cannot now insulate itself from otherwise proper voir dire simply by deciding to utilize captive counsel.

## C.

### A Balanced Approach

Although we conclude that questioning regarding a juror's affiliation or knowledge of "Nationwide Trial Division" is a proper voir dire question in order to discover any potential bias, we are cognizant of concerns that a juror's association of a defendant's attorney with an insurer could lead a juror to assume that liability insurance is available to satisfy any verdict. While such concerns may be exaggerated and not the parade of horribles we are asked to presume in this case, we agree with a different method used which permits the identification of possible juror bias during voir dire while minimizing any

potential for prejudice to insurers who choose to utilize captive counsel. As disclosed to this Court by Nationwide in its Petition for Writ of Prohibition, the Honorable James P. Mazzone, Judge of the Circuit Court of Ohio County, fashioned what we believe is a balanced approach to obtain the required information regarding juror knowledge or affiliation with Nationwide Trial Division and to minimize the potential for the jury concluding that insurance coverage is available to satisfy any verdict due to defense counsel being associated with an insurer. In *Chiplinski v. Sampson*, Ohio County Civil Action Number 04–C–26, a case involving a direct claim against an insured, Judge Mazzone inquired of the juror's affiliation with Nationwide Trial Division without associating Nationwide Trial Division with defense counsel's office.

 By asking separate and distinct questions, the potential for jurors to associate defense counsel with an insurance company is minimized and relevant, appropriate and necessary voir dire regarding juror bias is conducted. Such an inquiry is permissible whether captive counsel is representing an insured [9] or defending an uninsured or underinsured motorist claim.[10] Accordingly, we now hold that where an insurance company's captive law firm is involved in a trial in the circuit courts of this State, a voir dire question disclosing the identity of the insurer with whom captive counsel is associated may be asked. The manner of identifying the insurer should be in the same manner as the captive firm otherwise identifies its affiliation with the insurer. However, in order to minimize any potential for juror bias arising from the association of captive counsel with an insurer, including any juror assumption regarding the existence of liability insurance to satisfy any potential verdict, there should be separate questions regarding captive counsel and the insurer with whom captive counsel is associated. In the instant matter, the trial court may properly ask the jury proposed voir dire question 12 provided that the

---

9. Both *Stone* and *Richter* involved direct claims against insureds, as did *Chiplinski*.

10. Treating captive counsel's representation of insureds and defense of uninsured and underin-

sured motorist claims the same preserves the insurer's right under W. Va.Code § 33–6–31(d) to defend in the name of the alleged tortfeasor.

phrase "Nationwide Trial Division" is eliminated from the question. A second similar question may be asked with respect to Nationwide Trial Division such as: "Do any of you know or have experience with Nationwide Trial Division, its attorneys, paralegals, secretaries, and other office staff, or their spouses, children, parents, brothers or sisters?"

## IV.

### CONCLUSION

For the reasons set forth herein, the trial court did not abuse its discretion by overruling Nationwide's objection to the identification of "Nationwide Trial Division" during voir dire. Accordingly, Nationwide's Petition for Writ of Prohibition is denied.

**Writ denied.**

Chief Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

MAYNARD, Chief Justice, dissenting.

(Filed June 27, 2008)

Although the majority opinion attempts to minimize any potential juror bias from the disclosure during *voir dire* of the identity of the insurer with whom captive counsel is associated, I still believe that the preferable practice simply is not to permit reference to the insurer in front of the jury.

Our general rule that a jury should not be informed of the insured or uninsured status of a party is based on valid assumptions about jurors. For example, jurors who know that a party is covered by insurance may be more apt to award an injured plaintiff, even in the absence of a finding of negligence, if they know that the defendant will not be responsible for paying the verdict. Similarly, jurors may be more likely to award a sizable verdict if they know that an insurance company, a.k.a. a "deep pocket," will be liable.

In the instant case, I fear that reference to the Nationwide Trial Division during *voir dire* will prejudice the jurors by alerting them to the fact that the party actually responsible for paying any verdict awarded will not be the alleged tortfeasor but rather Na-

tionwide. As a result, the jurors will be more likely to disregard the real legal issues in favor of permitting the plaintiff to recover from a party whom the jury believes to have deep pockets. Such a result is plainly at odds with the principle that our judicial system should treat all parties equally regardless of their economic status or perceived economic status.

For this reason, I would grant the writ of prohibition to prevent the identification of Nationwide Trial Division during *voir dire*. Accordingly, I dissent.